(No. 20163.—

CHARLES YOUNG, Exr., Appellee, *vs.* H. S. SINSABAUGH *et al.* Appellants.

*Opinion filed December 18, 1930.*

J. R. Dean, for appellants.

Jesse Young, and Charles Troup, for appellee.

Mr. Justice DeYoung delivered the opinion of the court:

Charles Young as executor of the last will and testament of Thomas H. Young, deceased, filed a bill in the circuit court of Vermilion county against H. S. Sinsabaugh and M. B. Grimes, sheriff of that county, to enjoin the sheriff from selling an undivided interest in certain real estate left by the testator. A temporary injunction was granted. Motions to dissolve and to modify the injunction were successively denied. A general demurrer was interposed to the bill and the demurrer was overruled. Subsequently a special demurrer to the part of the bill which concerned the real estate not theretofore sold by the executor, an answer to the remainder of the bill and a replication to the answer were filed. The special demurrer was overruled and the defendants elected to abide by it. Evidence was heard and a decree was rendered by which the temporary injunction was made permanent. From that decree the defendants prosecute this appeal.

Thomas H. Young died testate on May 29, 1928. By the first section of his will he directed the payment of his debts and funeral expenses and the cost of administering his estate, and by the second he gave, devised and bequeathed the residue of his estate to his widow and six sons, "in the following shares and parts, viz: The said estate to be di-

vided into seven equal parts, and one part or one-seventh thereof to descend to and become vested in my beloved wife, Ida Z. Young, and one part or one-seventh to descend to and become vested in my son Charles Young or his heirs." The share of each of the other sons was given in language identical with that used in the case of Charles, and the section concluded with the words "share and share alike and in fee simple forever." The third section provided that any son who contested the will should receive no interest in the estate, but that the portion which otherwise would have gone to him should be divided among the other sons or their heirs. Two sons, Homer and Charles, were named executors by the fourth section, and the fifth section reads as follows: "I hereby expressly empower and authorize my executors to sell any or all of my real estate, left at my decease, giving to them, or either of them, full power and expressed authority to convey all title that I could have conveyed in life. And further fully authorize and empower my said executors or either of them to make sale of my said real estate at such time or times, as in their judgment is for the best interest of my estate."

The testator executed a codicil to his will consisting of three sections. By the first he gave two lots to his widow for life "with the remainder to be distributed after her death according to the provisions of my will heretofore made." By the second he gave her the rents and profits derived from certain other real estate consisting of two lots and two half lots "until the same shall be sold by the executor of my last will and testament according to the provisions thereof, as set out in said will," and the widow was directed "to pay all lawful taxes and assessments levied on said property during the time it is in her control." The testator, by the third section, gave his widow all his "household goods, furniture and furnishings" absolutely. The will and codicil were admitted to record by the probate court of Vermilion county on July 12, 1928, and since Homer

Young was then a non-resident of the State, Charles Young was appointed the sole executor of the will and codicil and letters testamentary were issued thereon to him.

The testator died seized of six lots and two half lots. On December 14, 1928, H. S. Sinsabaugh, an appellant, recovered a judgment in the circuit court of Vermilion county against Chauncey L. Young, one of the testator's sons, and Dora Young, and on the same day an execution was issued upon the judgment and placed in the hands of the sheriff. A levy was made upon all the lots left by the testator except one, and notices of the proposed sale by the sheriff of Chauncey L. Young's interest in those lots were posted. Prior to the time fixed for the sheriff's sale, the appellee filed the bill in this case, alleging as grounds for the relief sought that the real estate left by the testator was, at the time of making his will and codicil and since, incapable of actual partition; that only by a sale of the real estate could the division and distribution of the estate, as directed by the will and codicil, be effected; that the executor was empowered and directed to sell the real estate and after paying the debts and costs of administration, to divide the proceeds among the testator's beneficiaries; that the will and codicil converted the real estate into personal property and that none of the beneficiaries took any interest in real estate which could be the subject of levy and sale under an execution issued upon a judgment recovered against any such beneficiary.

Conversion has been defined to be, that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendible as such. It is an application of the maxim that equity regards that as done which ought to be done. An express declaration in the instrument that the land shall be treated as money, although not sold, or that the money shall be treated as land, although not actually laid out in the purchase of it, is not essential.

The direction to convert may arise by necessary implication from the nature of the instrument or the language employed. There must, however, be an expression, in some form, of an absolute intention that the land shall be sold and turned into money, or that the money shall be expended in the purchase of land. In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it. If the act of converting is left to the choice, option or discretion of the trustee, executor or other fiduciary charged with making it, no equitable conversion will take place, because no duty to make the change rests upon him. 3 Pomeroy's Eq. Jur. (3d ed.) sec. 1159; *Hale* v. *Hale,* 125 Ill. 399; *Haward* v. *Peavey,* 128 id. 430; *Gammon* v. *Gammon,* 153 id. 41; *Vierieg* v. *Krehmke,* 293 id. 265.

The testator, by the second section of his will, gave, devised and bequeathed his estate, after the payment of his debts and funeral expenses and the cost of administering his estate, to his widow and six sons, in equal parts. An undivided one-seventh, he expressly provided, should "descend to and become vested in" each of these devisees and legatees "in fee simple forever." The several shares, at least so far as the real estate was concerned, vested in the seven devisees immediately upon the testator's death. The executor who qualified is empowered to sell the whole or any part of the real estate and he may exercise that power, at such time or times, as in his judgment is for the best interest of the estate. The will, apart from the codicil, contained no imperative direction to the executor to sell real estate. While he was given that power, he was not obliged to exercise it, and there was no conversion, by the will, of the real estate into money.

By the first section of the codicil, the testator devised two lots to his widow for life with the remainder to be distributed after her death according to the provisions of the will. The definition of the word "distribute" as found in

Webster's New International Dictionary is to divide among several or many; to deal out; apportion; allot. In the Century Dictionary, the definition is to divide or parcel out; allot in shares; bestow in parts or shares, or in due proportion; apportion; divide among several: as, Moses distributed lands to the tribes of Israel * * *. While the word "distribute" ordinarily has reference to the division of personal property, yet it may also be used in speaking of the division of real estate (*Knight* v. *Gregory,* 333 Ill. 643). The will directed the division of the estate into seven equal parts and they were devised and bequeathed to a like number of devisees and legatees. The remainder in the two lots therefore vested in the devisees named in the second section of the will, subject to the widow's life estate. Even if the first section of the codicil should be construed to require a sale of the two lots upon the widow's death and a distribution of the proceeds among the several devisees or their heirs, yet the other real estate left by the testator was not subjected to the same requirement.

The income derived from the two lots and the two half lots described in the second section of the codicil is given to the widow until these parcels of real property "shall be sold by the executor of my last will and testament according to the provisions thereof, as set out in said will." The provisions of the will with respect to the sale of real estate are incorporated in and govern this section of the codicil. By those provisions the executor has the power to sell real estate, but he may or may not exercise that power as he chooses. Hence no duty or obligation to sell the particular lots and parts of lots is imposed upon the executor by the second section of the codicil.

The intention to create, from blended realty and personalty, a fund in money for the purpose of distribution may only be implied when the design of the testator is unequivocal and the implication is so strong as to leave no substantial doubt of its existence. When it is doubtful whether the

testator intended a conversion, the original character of the property will be retained. Equity will not presume a conversion unless it is demanded to accomplish the lawful purposes expressed in the will of the testator; and a conversion will not be implied from the mere fact that it will be the more convenient method of making a division of the estate. In the present case there is neither an express direction nor a necessary implication to convert the real estate left by the testator into money; and the special demurrer to the appellee's bill should have been sustained.

The decree of the circuit court is reversed and the cause is remanded to that court with directions to proceed in conformity with this opinion.

*Reversed and remanded, with directions.*