In the Matter of the Estate of Grace S. McDonough, Deceased.

Louise McDonough, Respondent-Appellant, v. Lloyd N. Schertz, Individually and as Executor of the Estate of Grace S. McDonough, Deceased, Petitioner-Appellee, and Eunice S. Howell, Respondent-Appellee.

**Gen. No. 69–10.**

Third District.

September 17, §969.

Berry, Leighty & Simshauser, of Macomb, for appellant.

Harris & Harris, of Macomb, and Rainey & Murphy, of Princeton, for appellee.

RYAN, J.

On July 1, 1966, Grace S. McDonough and others entered into a contract to sell certain lots to the City of Macomb. The contract provided for a down payment, a payment on July 1, 1967, and the payment of the balance on July 1, 1968. Warranty Deeds were executed and placed in escrow. The down payment was made and the payment due July 1, 1967, was likewise made when due.

On March 3, 1967, Grace S. McDonough executed her will, paragraph 4 of which provided:

> "I give and devise to my sister-in-law, Louise McDonough, all of the real estate that I have received through my husband, Robert E. McDonough, by Will or deed, located in McDonough County, Illinois, and owned by me at the time of my death, excepting my dwelling house located at 823 East Calhoun Street in Macomb, Illinois."

The interest which Grace S. McDonough owned in the City lots which were the subject matter of the above contract was acquired by her through the will of her husband, Robert E. McDonough, who had died testate on July 2, 1957. In addition to the acquisition of the interest in the City lots involved in this contract, Grace S. McDonough also acquired under the will of her late husband other real estate located in McDonough County valued at approximately $20,000.

Grace S. McDonough died on December 8, 1967, prior to the final payment under the contract by the City of Macomb. Her will was admitted to probate on January 25, 1968. On July 17, 1968, the City made the final payment under the contract. The sum of $4,732 represents the decedent's share in this final payment. Lloyd N. Schertz individually and as executor of the estate

of the decedent filed a petition asking the court whether said sum should be distributed as real property under paragraph 4 of the decedent's will above set forth or whether said sum should be distributed as personal property under the residuary clause of the will.

The trial court held that the sum of $4,732 was personal property and directed the executor to distribute the same to the residuary legatees under the will. We are of the opinion that the trial court was correct.

The question has been raised as to whether or not the doctrine of equitable conversion applied so as to change the nature of the interest of the decedent in the property conveyed to the City from real estate to personalty so that the proceeds from the sale would pass under the will as personal property. We do not believe that the answer to this question alone is determinative of the issues in this case. Neither do we believe that we are confronted with the problem of applying or not applying this equitable doctrine. Rather we are of the opinion that there are two questions presented for the court's determination. The first relates to the question of equitable conversion. Did the contract by this equitable doctrine work a conversion of the decedent's interest in the real estate in question from realty to personalty? The second question relates to the intention of the testator expressed in the will. If the contract did effect a conversion from real property to personalty, who did the testator intend should receive the proceeds of the sale under the terms of her will? Both of these questions must be answered because we feel that if the intent was so indicated in the will, the devisee of the real estate would be entitled to receive the balance due on the contract even though a conversion had been effected.

■ ■ The doctrine of equitable conversion has been defined to be that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real. It is the applica-

tion of the maxim that equity regards as done that which ought to be done. Rehbein v. Norene, 2 Ill2d 363, 118 NE2d 287; Young v. Sinsabaugh, 342 Ill 82, 173 NE 784. "Nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted; and this, in whatever manner the direction is given, whether by will or by way of contract, marriage articles, settlements or otherwise. . . ." Horner Probate Practice and Estates, § 2260, 1961, Revised Volume 3A, page 410.

■ In the case now before the court, if a conversion was effected, it was brought about by virtue of the contract dated July 1, 1966, and the conversion would have taken place as of the date of the contract. Shay v. Penrose, 25 Ill2d 447, 185 NE2d 218. The conversion would have been accomplished on July 1, 1966, the date of the contract prior to the execution of the will on March 3, 1967.

■ By the doctrine of equitable conversion, equity has sought to give effect to the intention of the parties involved and not to defeat their intention. The trial judge correctly made this observation in rendering his opinion. If a contrary intention appears, a contrary result must be achieved and equity will not decree a conversion if a contrary intention is evident. Leesman, Resulting Trusts—Equitable Conversion as Applied to Intallment Contracts for the Sale of Real Estate (1934) 29 ILR 97. Whether there was a conversion of land into personalty depends upon the contract. An equitable conversion is implied only when the intent is unequivocal and the implication leaves no substantial doubt. In order to work a conversion the contract must be such that a court of equity can specifically enforce it against an unwilling purchaser. Masters v. Masters, 325 Ill 429, 156 NE 481.

The contract with the City of Macomb, in addition to providing for the down payment and the payment of the balance of the purchase price in two installments, also provided that the buyer was entitled to immediate possession of the real estate subject to existing leases. It provided that the buyer was entitled to collect all rents which thereafter became due from the tenants, that the buyer could remove any buildings of the sellers which were not under lease and that it could make improvements on the property at any time thereafter, all without the consent of the sellers. The buyer agreed to pay all special assessments levied against the property after the date of the contract. In addition, the sellers had executed deeds and deposited them in escrow. This contract is clearly one that can be specifically enforced against an unwilling purchaser which is a requirement for conversion as announced by the Masters case, supra. The contract expresses the intent to transfer the incidents of ownership of the real estate from the sellers to the buyer as of the date of the instrument. This contract appears to be the typical situation for the application of the doctrine of equitable conversion and the application of this doctrine appears to conform to the intent of the parties as manifested in the contract. We hold that on July 1, 1966, an equitable conversion of the decedent's interest in the real estate involved in the contract was effected.

In determining who under the decedent's will is to receive the balance due under the contract, we are not concerned with applying the equitable doctrine or not applying it. As indicated above, the conversion was effected by the contract which was executed prior to the decedent's death and prior to the execution of her will. We are rather now concerned with the decedent's intent as to who should receive the balance due on this contract and this intent must be ascertained from the will. Even though there may have been a conversion of the

real estate to personalty, if the will indicates that the testator intended that the devisee of real estate should receive the balance due under the contract to sell real estate, this end can be accomplished without holding that the doctrine of equitable conversion will not be applied.

The appellant, Louise McDonough, has cited Heirs of Wright v. Minshall, 72 Ill 584, and Covey v. Dinsmoor, 226 Ill 438, 80 NE 998, in support of her position that the doctrine of equitable conversion does not apply in this case. Both of these cases involve specific devises of real estate for which a contract for sale had previously been executed prior to the execution of the will. The Wright case involved a devise of "all his real estate, land and appurtenances in Clay County." The Covey case involved a devise of a tract of land specifically described, however, it was stated in the will that the devise was "subject to my contract of sale . . . ." The court in Rhodes v. Meredith, 260 Ill 138, 102 NE 1063, explained the holding in these two cases by saying at page 144: "The doctrine of equitable conversion was not allowed to interfere with the clearly expressed intention of the testators." It should be noted that in neither the Wright case nor the Covey case did the devise convey only that real estate which the decedent owned at death. Since the contracts were made prior to the execution of the will in both cases and since a determination in each of these cases that the property would pass as personalty would totally defeat the devise in the will executed subsequent to the contract, the court held that the intention of the testator was that the proceeds of the sale were to pass to the devisee of the real estate. A contrary determination would have rendered the devise made after the contract was executed meaningless and would completely defeat the devise.

A contrary situation exists in the will now before this court. Although the contract was executed prior to the execution of the will the contract did not involve all of

the real estate in McDonough County which the testator had received through her late husband. In addition to the real estate covered by the contract the testator owned some $20,000 worth of real estate in McDonough County which she had received through her late husband. Therefore, if the balance due on the contract is to pass as personal property under the will the provision of the devise now under consideration is not rendered meaningless as would have been the case in the Wright and Covey cases.

Furthermore, the testator in our case expressed her intent in this devise to transfer to the devisee only so much of the real estate described in paragraph 4 of the will as she owned at the time of her death. This could have been all or none of the real estate so described. This is clearly a different intention than that expressed by the testators in the Wright and Covey cases.

In Adams v. Peabody Coal Co., 230 Ill 469, 82 NE 645, cited by the appellant the testator devised "all the real estate that I shall own at my decease." Subsequent to the execution of the will the testator executed an option to Peabody to buy the coal and mineral rights. The court recognized the doctrine of equitable conversion but would not apply the same stating that it considered Covey v. Dinsmoor, supra, as controlling without considering the differences in the two cases. In Covey the contract was executed before the execution of the will while in Adams the contract was executed after the will, but the court gave no consideration to the principle of ademption. In Covey the devise was made subject to the contract which manifested a different intent than did the language used in Adams. See James, Illinois Probate Law and Practice, chapter 50, section 46A (Comment).

Since we have found that a different intent has been expressed by the testator in the case now before us than was expressed in the Covey case and since the decision in the Adams case was rendered solely because of the decision in the Covey case, we do not consider the deci-

444

sion in the Adams case as helpful in the case now under consideration.

In Rhodes v. Meredith, supra, the decedent died intestate. Prior to his death he had executed a contract to convey his farm. The court stated at page 143:

> "When a valid, enforcible contract has been entered into for the sale of real estate, as between the vendor and vendee equity regards the vendee as the owner of the land and the vendor as the owner of the purchase money, which is personalty. The vendor is regarded as the trustee of the naked legal title for the benefit of the vendee, and the vendee as the trustee of the purchase money for the benefit of the vendor. (Citing cases.) Where the owner of real estate thus enters into a valid contract for its sale, the nature of his estate under the doctrine of equitable conversion is changed and the real estate will be regarded as converted into personal property, and, in case of the death of the vendor before the contract is performed, it will be treated as assets in the hands of his personal representative."

There appears to be no reason why the real estate which had been converted to personalty by a contract for sale should pass as personalty in case of intestacy as in the Rhodes case but pass as real estate when a will is involved as the appellant contends in this case, unless the will expresses such an intent. We find no such intent expressed in the will now under consideration.

The decision of the Circuit Court of McDonough County will be affirmed.

Affirmed.

STOUDER, P. J. and ALLOY, J., concur.