DOUGHERTY-JANSSEN COMPANY, Plaintiff, *v.* DANAGE ENTERPRISES, INC., *et al.*, Defendants.—(PEORIA TOBIN BROS., INC., Counterplaintiff-Appellant, *v.* DANAGE ENTERPRISES, INC., *et al.*, Counterdefendants-Appellees.)

Third District   No. 79-267

Opinion filed February 7, 1980.

Joseph Z. Sudow, Charles G. Roth, and Phillip B. Lenzini, all of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellant.

John A. Slevin, John R. Pusey, and Gregg N. Grimsley, all of Vonachen, Cation, Lawless, Trager & Slevin, of Peoria, for appellees.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Peoria County in favor of the counterdefendants-appellees, First Federal Savings and Loan Association (First Federal) and the Peoria Housing Authority (PHA), and against the counterplaintiff-appellant, Peoria Tobin Brothers, Inc. (Tobin). This action concerns foreclosing a mechanic's lien for work done on certain parcels of property in Peoria County. A subcontractor, Dougherty-Janssen Company, filed its complaint against the property owners, Shanks-Galesburg Development Company and Peoria Housing Authority, the contract-developer Danage Enterprises, Inc., and several other defendants with alleged interests, including Tobin and First Federal. Tobin then filed a cross-petition for foreclosure of its mechanic's lien naming the owners, contractors and all other defendants as interested parties. The trial court determined that Tobin's lien was subordinate to that of First Federal and entered judgment for First Federal and the PHA. From this judgment Tobin appeals. We affirm.

In September 1973, the PHA entered into an agreement with Shanks-Galesburg Development Company to purchase 75 "scattered site" houses upon their completion. Shanks-Galesburg, as owner of the properties, entered into an agreement with a contractor, Danage Enterprises, Inc., to build these houses. Danage entered into three agreements with Tobin to supply certain materials and labor. Two of these contracts were called the $1350 contract and the $1600 contract.

Work on the project was to be completed in seven phases, each phase consisting of approximately 10 homes. When each phase was completed, PHA would purchase the homes from Shanks-Galesburg using Federal funds. The interim construction financing for the project was provided by First Federal. Each phase was financed separately with First Federal receiving the mortgage deed for each phase. As each phase was completed and purchased by PHA, and First Federal's outstanding loan balance with regard to that phase paid, the mortgage on that phase was released by First Federal.

According to the petition for intervention, which was granted, the first four phases were completed and purchased by PHA. The last three phases were never completed and as a result the contracts were never completed. The last day of work on the $1350 and $1600 contracts was the work done on phase 4.

On March 17, 1975, Tobin sent to PHA, Shanks and Danage a subcontractors' 90-day notice claiming there was due on the various homes in phases 1-6 (phase 7 was never started) the sum of $44,908.50. This notice was never sent to First Federal. On March 18, 1975, several

claims of lien were filed by Tobin in the Recorder's Office. Numerous other subcontractors and materialmen also filed liens. On May 7, 1975, Dougherty-Janssen filed suit to foreclose its mechanic's liens, naming all parties as defendants. On May 16, 1975, Tobin filed its answer and petition to intervene for foreclosure of mechanics' lien, naming PHA, Shanks-Galesburg and Danage as defendants and all other parties-defendants, including First Federal, as being unknown interests subordinate to its rights.

In the interim, the trial court appointed a receiver for the properties in phases 5 and 6 and they were subsequently sold at public auction. All other subcontractor claims were disposed of in manners not material here. The receiver then held funds of approximately $280,000. Tobin claims a lien of $44,908.50 plus interest, while First Federal asserted outstanding mortgage balances of approximately $350,000.

On March 15, 1979, the trial court entered its order which found for First Federal and against Tobin on the ground that Tobin's claim of lien was defective. The court ruled the lien to be defective for two reasons. First, the court held that First Federal was a known lending agency and that Tobin failed to send First Federal notice of the lien, as required in the mechanic's lien statute. Second, the court held that the lien, as recorded, was against multiple noncontiguous tracts without setting forth the date of last work and amount of lien claimed against each tract. Under the language of the statute and the construction given it in *Schmidt v. Anderson* (1911), 253 Ill. 29, 97 N.E. 291, the court ruled in favor of First Federal and against Tobin.

On appeal, Tobin raises three issues: (1) whether the trial court erred in determining that section 24 of the Mechanics' Liens Act required notice by the subcontractor to First Federal; (2) whether the trial court erred in determining that section 7 of the Mechanics' Liens Act required the filing of a claim listing the date of last work and amount of lien claimed as to each tract; and (3) whether the trial court erred in finding that First Federal was a known lending agency.

■■ Because we hold that section 7 of the Mechanics' Liens Act (Ill. Rev. Stat. 1975, ch. 82, par. 7) requires that a subcontractor who files a single claim of lien for work performed on separate, noncontiguous parcels must specify the amount of lien claimed for each lot, the date of completion of each lot and file the claim within four months after completing the work on each lot, we need not reach appellant's other issues.

Initially we note that since the proceeds in this case are only from the sale of properties in phases 5 and 6, we are concerned only with the liens in conflict on those buildings, not phases 1-4. Section 28 of the Mechanics' Liens Act (Ill. Rev. Stat. 1975, ch. 82, par. 28) permits any subcontractor

who is not paid within 10 days after notice is properly served under the Mechanics' Liens Act to file a claim for lien or file a complaint and enforce such lien within the same limits as to time and in such other manner as provided for the contractor in section 7.

Section 7 reads in pertinent part:

> "No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within four months after completion, * * * he shall either bring suit to enforce his lien therefor or shall file in the office of the recorder of deeds of the county * * * a claim for lien, verified by the affidavit of himself, or his agent or employee, which shall consist of a brief statement of the contract, * * * and a sufficiently correct description of the lot, lots or tracts of land to identify the same.
>
> * * *
>
> And provided further, that in the event the contract relates to two or more buildings on two or more lots or tracts of land, then all of said buildings and lots or tracts of land may be included in one statement of claims for a lien." Ill. Rev. Stat. 1975, ch. 82, par. 7.

Prior to the passage of section 7, a single claim for lien could not be filed on separate, noncontiguous parcels of land, even though all the labor was performed under one contract. The subcontractor had to file a separate claim on each lot. (See *Aurand v. Martin* (1900), 188 Ill. 117, 58 N.E. 926.) In 1903, section 7 of the Mechanics' Liens Act was enacted for the purpose of permitting a contractor to file one claim against separate buildings on lots that were not adjacent to each other provided all the work on the buildings was performed under one contract.

In 1911, in *Schmidt v. Anderson* (1911), 253 Ill. 29, 97 N.E. 291, the Illinois Supreme Court ruled that the statute mandated certain requirements be followed in filing one claim of lien for noncontiguous parcels of land. In *Schmidt* the lien claimant sought to enforce a lien for work performed on four houses on four separate lots pursuant to a single contract. Work on all houses, with the exception of one, was completed by November 1907. The work on the last house was completed in March 1908, and the claim for lien was filed in May of 1908, more than four months after the work was completed on the first three houses. The claim of lien did not allocate what part of the lien was apportioned to which house. The court held that, where there is a single contract, one claim can be filed for separate noncontiguous buildings. However, the court ruled:

> "[T]he Legislature did not intend to permit two or more buildings on two or more tracts of land to be included in one claim for lien unless the claim was filed within four months after the last labor was performed or the material furnished on each of the buildings.
> * * *

Had this claim for lien stated specifically as to when the last work was performed or material furnished on each of the separate houses, then, if the labor was performed * * * on any particular house within four months of the time the claim was filed, a claim for such labor and material furnished on that house could have been enforced as a lien thereon, even though the labor or material for any of the other houses was shown to have been performed or furnished more than four months before the claim was filed." *Schmidt v. Anderson* (1911), 253 Ill. 29, 97 N.E. 291.

In the instant case, the last work on phases 5 and 6 was performed no later than December 4, 1974.

■█ The claims of lien filed by Tobin on March 18, 1975, were ineffective in that, as recorded, they did not list the dates of completion or last work as required by *Schmidt*. The complaint in this case was filed on May 16, 1975, more than four months from the date of last work on the other phases. Thus, *Schmidt* precludes Tobin from having an effective lien on the buildings in phases 5 and 6.

■█ Tobin argues that all six phases should be covered by the complaint in that the contract was never completed and therefore, the suit was brought within four months of the completion of the contract. However, "completion" as used in section 7 does not refer to completion of the contract. It means completion of the work for which a contractor seeks to enforce his lien. (*W. G. Wood Co. v. Nyeswander* (1914), 187 Ill. App. 354.) It is undisputed here that the work on phases 5 and 6 was completed more than four months prior to the filing of the complaint. Therefore, there is no effective lien on those buildings.

█ Tobin's argument that the *Schmidt* requirements would impose undue hardship is equally unpersuasive. The purpose of requiring a claim to be filed within four months is to ensure that third persons dealing with the property have notice of the existence, nature and character of the lien as well as the times when the material was furnished and labor performed, and thus be enabled to learn from the claim itself whether it is enforceable. (*Schmidt v. Anderson.*) The *Schmidt* requirements operate to ensure that this purpose is served. There is no reason that Tobin could not have filed a claim as to each phase when it was completed.

For the reasons stated above, we hold that Tobin has no effective lien on the buildings in phases 5 and 6.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.