**In the Matter of ARGONNE CONSTRUCTION CO., INC., Debtor.**

**ARGONNE CONSTRUCTION CO., INC., Plaintiff,**

v.

**LaSALLE NATIONAL BANK, Trustee Under Trust Nos. 54936, 82578 et al., Defendants.**

**Bankruptcy Nos. 80 B 5132, 80 A 0848.**

United States Bankruptcy Court, N. D. Illinois, Eastern Division.

March 30, 1981.

---

Frank O. Wetmore, II, Winston & Strawn, Joseph E. Davis, Chicago, Ill., Stanley M. Cahn, John J. Foster, Danielle De-Palma, Chicago, Ill., for Argonne Const. Co.

Martin F. Hauselman, Liebling, Hauselman & Miller, Ltd., Chicago, Ill., for LaSalle Natl. Bank.

R. R. Frankenstein, Frankenstein & Frankenstein, John Loftus, Robert T. Palmer, McDermott, Will & Emery, Chicago, Ill., for LaSalle Glass & Mirror Co.

David H. Coar, Chicago, Ill., United States Trustee.

## OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This cause comes on for decision on related motions by condominium unit owners, their mortgagees, the project developer, and others holding legal or equitable interests in the sold and unsold condominium units, all named as defendants, to dismiss a

cross-claim for foreclosure of a mechanics lien claim filed by a general contractor, the debtor herein. The cross-claim of the general contractor was in response to the complaint by a subcontractor to foreclose on its claim for mechanics lien.[1] This opinion and order are not dispositive of all aspects of the mechanics lien foreclosure because the allegations of the cross-claim admitted for these purposes by the motions to dismiss,[2] were not sufficiently factual so that the Court could determine what the relationships of all of the parties are to each other, or to the contractor. The motions to dismiss were not directed to the complaint of the subcontractor, so that is not presently at issue.

Belden Building Venture (hereinafter "Belden") is a limited partnership which is engaged in converting a 15 apartment building situated at 327–335 West Belden Avenue, Chicago, Illinois into 15 customized condominium units. Legal title to the land and building were in LaSalle National Bank (hereinafter "the Bank"), as Trustee under Trust No. 82578, prior to the sale of seven of the units and continues to be with respect to the eight units remaining unsold. A Declaration of Condominium was recorded in the Office of the Recorder of Deeds of Cook County, Illinois on March 20, 1979, amended by another document recorded May 11, 1979.

It is a virtual certainty, although not pleaded, that Heather and Peter Norton had contracted to purchase Unit 1–333 and that Karla and Harry Moore had contracted to purchase Unit 3–331 prior to June 1, 1979, when Argonne Construction Co., Inc. (hereinafter "Argonne") contracted to remodel two units at a cost of $240,000. That letter agreement provided in part:

"We propose to furnish all labor and materials necessary to complete the construction of the Norton residence, 333 West Belden ... in accordance with drawings as prepared by Arthur A. Gouvais architect ... dated May 3, 1979. Also we propose to furnish all labor and material necessary to complete the construction of the Harry C. Moore residence, 331 West Belden Avenue ... in accordance with drawings dated May 18, 1979 as prepared by Jack Wozniak and Associates, Inc. ..."

It is contrary to all logic to suppose that Mr. and Mrs. Norton or Mr. and Mrs. Moore would engage architects to make final detailed drawings for construction work prior to the time that they had become contract purchasers, in one form or another, of their respective units. As such, they are "owners" as the term is used in the Illinois Mechanics Lien Act.[3]

Greatly oversimplified, the Illinois mechanics lien law is that a contractual supplier of material or labor to a construction project obtains an inchoate lien as of the date of the contract, which upon subsequent perfection relates back to the date of the contract. As against the "owner" the lien may be perfected by recording a claim for mechanics lien with the recorder of deeds of the County where the land is located within two years of the performance of the last work under the contract, or by bringing suit against the owner within two years of that date. With respect to third parties the lien may be perfected by recording a claim for lien with the recorder of deeds within four months of the completion of the contract or by bringing suit within four months of the completion of the contract.

The cases interpreting the Mechanics Lien Act appear to follow a meandering path because of the difference in perspective in the individual cases between the two inconsistent objectives of the Act. The primary purpose of the Act is to assure that payment is made for materials and labor by

1. The foreclosure proceeding originally was filed in the Circuit Court of Cook County, Illinois (No. 80 CH 798) and was removed to this Court under the expounded jurisdictional authority granted by the Bankruptcy Reform Act (28 U.S.C. § 1478) and Interim Bankruptcy Rule 7004.

2. *Matter of Rick Michaels Ford, Inc.,* 7 B.R. 763 (Bkrtcy.N.D.Ill.1980).
   Rules Bankr.Proc. Rules 112, 712(b).

3. 1979 Ill.Rev.Stat. ch. 82, Secs. 1–39.

permitting the real estate to stand as a form of guarantee behind the owner's contractual liability to pay. A secondary purpose is to protect innocent third persons from having their real estate encumbered by liens of which they were not aware and had no reasonable opportunity to ascertain. In a given case one court may focus upon the rights of the contractor; in another the attention may be directed primarily toward the protection of innocent third parties. The language of the two types of cases may be difficult to reconcile.

In the instant case the Argonne contract was executed June 1, 1979; the work was completed November 21, 1979; the claim for lien was filed November 28, 1979; and the cross-claim was filed May 16, 1980. The cross-claim of Argonne was in response to a complaint to foreclose of LaSalle Glass & Mirror Co. (hereinafter "Mirror Co."), one of the subcontractors on the project. Mirror Co. completed its work September 27, 1979; recorded its claim for lien on January 9, 1980; and filed suit in late January or early February, 1980. It will be seen that from the standpoint of timeliness,

A. with respect to third parties both Argonne and Mirror Co. perfected their liens because they filed their claims within four months of the completion of their respective undertakings,

B. with respect to "owners" both Argonne and Mirror Co. perfected their liens because

1. they filed their claims within four months of the completion of their respective undertakings, and

2. they brought suit within two years of the completion (Argonne joined all parties in interest as defendants; some of them are "owners"; some are third parties).

The question of perfection of the lien with respect to content is considerably different from the aspect of timeliness. Section 7 of the Mechanics Lien Act provides in part:

"... a claim for lien ... which shall consist of a brief statement of the con-

tract, the balance due after allowing all credits, and a sufficiently correct description of the lot, lots or tracts of land to identify the same. Such claim for lien may be filed at any time after the contract is made, and as to the owner may be filed at any time after the contract is made and within two years after the completion of said contract ..."

The claim for lien filed by Mirror Co. and the claim for lien filed by Argonne both described the location of the project by its street address and by its legal description as that existed prior to the recording of the Declaration of Condominium. The original filing and the amended filing are before the Court as exhibits, but the copies are illegible. We know that they were recorded, but we do not know what they say. We may presume that by May 11, 1979, the date that the amendment to the declaration was recorded, the legal description of each condominium unit included a specific designation of its own discrete number or combination of numbers superimposed upon the legal description which previously had been applicable to the entire plot. The legal description used in both recorded claims for lien (the claim of Mirror Co. and the cross-claim of Argonne) was that of the entire plot.

▮ When the Mechanics Lien Act is read in conjunction with the Condominium Property Act[4] it is clear that the description before the Court of the affected real property in the Argonne claim is not sufficiently precise to enable an outsider to determine from the claim itself what property had been improved; thus the lien does not become operative as to third parties. Because one of the purposes of the Mechanics Lien Act was to provide protection to innocent subsequent purchasers, the case law as to them has been quite strict in requiring that the recorded claim for lien be of sufficient detail that a record search would reveal the nature and extent of the work done and the precise location of the improvement. With respect to "owners", however, the interpretations have been con-

4. 1979 Ill.Rev.Stat. ch. 30, Secs. 301–322.

siderably broader.[5] As parties to the contract the owners are aware of its scope; they know the location of the project because it was their decision to improve it. Consequently, the owners do not require the same degree of protection as do others who had not dealt with the property prior to the time that work was performed on it.

The briefs were written and the arguments made as though the respective condominium purchasers became "owners" as of the date that their purchases were closed, which were at various times in the summer and fall of 1979. We do not agree with that view. We follow established precedent in holding that the purchasers became "owners" at whatever time they became contract purchasers or otherwise obtained an enforceable right to obtain title to the property on payment of the purchase price.[6] Beyond question the Nortons and Moores were in that category by the middle of May, 1980.

Whether the remaining five condominium unit purchasers are to be treated as "owners" or as third parties cannot be ascertained at the present time because it is not known when they contracted to purchase their respective units. With respect to them, there is not the time reference of completed architects drawings. Because the cross-claim fails to allege facts respecting the five upon which a finding of "owners" can be based, the Court is obliged for the purposes of the motion to dismiss to consider them to be third parties. Thus, as to the issues presently before the Court, they and their units are not subject to the mechanics lien claim of Argonne. As to them the motions to dismiss will be sustained without prejudice.

Mortgagees and others with actual or potential interests in the condominium units also have been made parties by the cross-claim. As to them also the factual allegations are inadequate to enable the Court to determine whether they were sufficiently closely involved in the procedures and finances of the purchase contracts and closings to cause them to be treated as subordinate to the contractor. Consequently, for the purpose of the pending motions, they also will be considered to be third parties, and as to them the motions to dismiss will be sustained without prejudice.

The Bank is an "owner" because legal title to all of the property was held by it prior to the sale of the condominium units and continues to be held by it with respect to the eight unsold units. Belden is an "owner" because it was the developer and beneficial owner of all of the property before any units were sold and continues to be with respect to the eight units which have not been sold. The motions to dismiss are denied with respect to the Bank and Belden, as well as to the Nortons and Moores.

The letter agreement of June 1, 1979 was between Argonne and

Mr. George Smith
Intown Developers, Inc.
5700 North Clark Street
Chicago, Illinois 60660

No argument ever was advanced that Smith was not authorized to act for Belden, although it was urged that Belden was not authorized to act for the condominium purchasers. From the context the Court presumes that Smith, or Intown Developers, or both, were partners of Belden Building Venture. In any event, the issue need not be considered here because it was not raised by the parties.

With respect to the Norton and Moore residences Belden was the only entity which

---

5. *Fischer v. McHenry State Bank*, 74 Ill.App.3d 509, 30 Ill.Dec. 230, 392 N.E.2d 995 (1970); *Dunlop v. McAtee*, 31 Ill.App.3d 56, 333 N.E.2d 76 (1975); *Miller v. Reed*, 13 Ill.App.3d 1074, 302 N.E.2d 131 (1973); *Edward Hines Lumber Co. v. Dell Corp.*, 49 Ill.App.3d 873, 7 Ill.Dec. 207, 364 N.E.2d 368 (1977); *Sorg v. Crandall*, 233 Ill. 79, 84 N.E. 181 (1908).

6. The subject is discussed in "The Illinois Condominium Act and the Illinois Mechanics Lien Act: A Transactional Analysis, 25 DePaul L.Rev. 465, 468, 472 (1976).
*State Savings & Loan Assn. v. Kauaian Dev. Co.*, 50 Haw. 540, 445 P.2d 109 (1968).

could contract for the reconstruction of the units, so that it is not necessary to consider further that agency relationship. During the period of time between the execution of a contract to purchase and the closing of the sale, Belden either had to delegate the awarding of remodeling contracts to the contract purchasers, or the contract purchasers had to delegate that authority to the contract seller (Belden). Because Belden continued to be the operating manager of the project it was logical that it should control all construction on the project.

The overlay of condominium law upon mechanics lien law requires that the underlying principles of each be recognized. It was stated above that the Bank as holder of the legal title, Belden as contract seller, and at least two and probably seven purchasers as contract buyers all are to be considered to be "owners", as the term is used in the Mechanics Lien Act. In determining whether or not the June 1, 1979 letter agreement should be governed by the principles applicable to owners or the principles applicable to third parties, the answer is both. There were seven contract purchasers in existence at some point. Norton and Moore were the purchasers of the units which were to be constructed under the June 1, 1979 letter agreement and each was entirely familiar with the work which was to be done on his unit, including the estimated cost. It is appropriate that Norton and Moore should be treated as owners. In fact, it was only a matter of months before they became the sole owners of their respective units. It was they who were interested in and familiar with construction details, and not either the Bank or Belden. Each of them knew what his own unit was to cost, so that the allocation of the combined cost expressed in the claim for mechanics lien did not present a problem to either of them. Each of them knew where his own unit was, so that he was not prejudiced in any respect because the claim for lien gave the address of the entire project and not the description of his own unit.

■ On the other hand, the remaining contract purchasers probably had no knowledge of the construction being undertaken on the Norton and Moore residences; each of the remaining five would have had a detailed knowledge as to his own unit. Thus with respect to his own unit each of the contract purchasers should be treated as an owner, but as to other units he should be treated as a third party.

■ With respect to the common area, however, each of the seven unit contract purchasers knew that work had to be done on the common area. Whether a claim for lien described that it related to the common area for the whole project, or to the common area for 15 designated condominium units, would have made no difference to the contract purchasers. In either event the claim would relate to the same entry ways, sidewalks, lawns and bushes. Thus as to common area work it is appropriate to treat all of the contract purchasers as "owners", even though with respect to work on individual units each contract purchaser would be treated as a third party as to all condominium units except his own, and as to his own he would be treated as an "owner."

■ Argonne has attempted to piggyback onto the $176,000 claim for lien for work done on the Norton and Moore residences, a $6,000 claim for work done on common areas. Even though all seven contract purchasers would be considered to be "owners" with respect to the specificity standard for mechanics lien claims, the claim for lien filed November 28, 1979 will not support a proceeding to enforce a lien on the entire common area; not because the property is not properly identified but because there is no indication from the claim:

1. that there ever was a contract to do common area work,

2. that there was a price established for that work,

3. what the date of the contract was,

4. when the last work or delivery of materials was made.

■ There are several essentials which must exist in order that a claim for lien may be prosecuted. First, there must be a contract. Second, the lien must describe

the outlines of the contract and state that performance has been completed and when; and third, the property must be described upon which the work was performed. With respect to the common area work under consideration there is not any specific allegations of a contract to perform such work nor is there a description of the work, cost and other essential terms in the claim for lien which was filed. Although it is too late now to perfect a lien for common area work which would affect the interests of third parties, the two year period has not yet run as to "owners." It is stated in the briefs that the common area work was completed September 20, 1979, but no contract, written or oral, was introduced into evidence.

Consequently, although the seven contract purchasers' units would be subject to a lien for common area work under a claim for lien properly filed, or in a suit filed within two years in the absence of a recorded mechanics lien claim, neither of those conditions exists at the present time. A suit which might have been filed within two years of the completion of work becomes faulty when it does not stand on its own feet, but rather relies upon a faulty claim for lien.

The claim for common area work is dismissed without prejudice as to all parties defendant named in Argonne's cross-claim.

With the view of avoiding having Argonne file a separate proceeding based upon sustainable allegations, leave is granted to Argonne within twenty days to file a second amended cross-claim, which period will be extended an additional twenty days upon representation of the attorney for Argonne that additional discovery is necessary to determine when the seven buyers became contract purchasers and to determine the extent to which the other defendants were participants in the planning of and financing for the construction work on the respective units and the common areas.