ARGONNE CONSTRUCTION
COMPANY, Appellee,

v.

Peter B. NORTON, et al., Appellants.

ARGONNE CONSTRUCTION
COMPANY, Appellants,

v.

Harry C. MOORE, et al., Appellees.

Nos. 81 C 7196, 81 C 7295.

United States District Court,
N.D. Illinois, E.D.

Feb. 28, 1983.

Frank O. Wetmore, III and Paulette J. Delk, Winston & Straン, Chicago, Ill., for Argonne.

David Coar, Chicago, Ill., trustee.

Stanley M. Cahn, John J. Foster, Susan E. Woods, R.R. Frankenstein, Frankenstein & Frankenstein, Joseph E. Davis, Martin F. Hauselman, Liebling, Hauselman & Miller, Ltd., John Loftus, °Robert T. Palmer, McDermott, Will & Emery, Jerome E. Wexler, Holleb, Gerstein & Glass, Ltd., Chicago, Ill., for Norton and Moore et al.

### MEMORANDUM OPINION

GRADY, District Judge.

These cases are on appeal from orders of the bankruptcy court. In No. 81 C 7196, Peter B. Norton and Heather M. Norton ("the Nortons") are appealing the bankruptcy court's denial of their motion to dis-

miss the cross-claim of Argonne Construction Company, Inc. ("Argonne"). In No. 81 C 7295, Argonne is appealing the bankruptcy court's order granting the motion of Harry C. Moore and Karla J. Moore ("the Moores") to dismiss the cross-claim of Argonne. We reverse in No. 81 C 7196 and affirm in No. 81 C 7295.

FACTS

Argonne is a contractor which contracted to perform work and supply materials to improve two apartments located in a building at 327–335 West Belden Avenue in Chicago. Argonne's contract was with Belden Building Venture ("Belden"), a developer having management and control of the premises. LaSalle National Bank was the legal title holder of the premises upon which the building which contained these two units was located. LaSalle National Bank filed a Declaration of Condominium ("Declaration") with the Cook County Office of the Recorder of Deeds on March 20, 1979. On June 1, 1979, when the original contract between Argonne and Belden was signed, no deeds evidencing the transfer of ownership of any of the newly created condominium units had been recorded in the Office of the Recorder of Deeds. However, on April 30, 1979, the Nortons had signed a contract to buy a condominium. On September 25, 1979, the Nortons recorded in the Office of the Recorder of Deeds a deed evidencing their purchase of their condominium unit. On September 27, 1979, the Moores recorded in the Office of the Recorder of Deeds a deed evidencing their purchase of their condominium unit.

Between June 1, 1979, and November 21, 1979, Argonne supplied materials and performed labor to improve two units and some common areas on the premises. On November 28, 1979, Argonne filed in the Office of the Recorder of Deeds of Cook County a mechanic's lien claim which set forth the nature of the contract, the balance due after all credits, and a general description of the premises. The lien claim did not identify any specific unit or units on which Argonne had worked, nor did it apportion the work done as to individual units

or state the date on which work on each unit was completed.

On February 5, 1980, a subcontractor of Argonne filed a complaint for foreclosure of mechanic's lien against Argonne in the Circuit Court of Cook County. While that complaint was pending, Argonne filed a Chapter 11 bankruptcy petition and removed the subcontractor's complaint to bankruptcy court. On July 1, 1980, Argonne filed a cross-claim for foreclosure of mechanic's lien against the known and unknown owners of the premises upon which Argonne's November 28, 1979, mechanic's lien claim was filed, including the Nortons and the Moores.

On March 30, 1981, Bankruptcy Judge Merrick denied the Nortons' and Moores' motions to dismiss Argonne's cross-claim. On December 11, 1981, after having granted a motion for reconsideration on November 19, 1981, Judge Merrick again denied the Nortons' motion to dismiss but granted the Moores' motion to dismiss.

The Nortons are appealing Judge Merrick's denial of their motion to dismiss Argonne's cross-complaint, and Argonne is appealing Judge Merrick's granting of the Moores' motion to dismiss Argonne's cross-complaint. On February 4, 1982, this Court entered an order permitting these interlocutory appeals and consolidating the two cases for reasons of judicial economy.

DISCUSSION

We lay out the parties' basic positions at the outset; we will elaborate in the course of the discussion.

The Nortons and Moores both argued below that Argonne's cross-claim for foreclosure of mechanic's lien must be dismissed as to them because Argonne's lien claim failed to state the date of completion of each unit and allocate the portion of the total amount claimed which is attributable to each unit. This argument stems from the Nortons' and Moores' interpretation of § 7 of the Mechanic's Lien Act, Ill.Rev.Stat. ch. 82, § 1 *et seq.*, and § 9.1 of the Condominium Property Act, Ill.Rev.Stat. ch. 30, § 301 *et seq.*, discussed *infra.*

In its argument below, Argonne interpreted the Mechanic's Lien Act and the Condominium Property Act as not requiring allocation as to the Moores' and Nortons' units. Argonne's theory was that the condominium building was a single property when the lien claim arose because no units had yet been conveyed to a purchaser; therefore, Argonne concludes, its lien claim was not required to be apportioned as to individual units.

Judge Merrick agreed with the Nortons and Moores that the Mechanic's Lien Act and the Condominium Property Act required Argonne, *as to purchasers,* to allocate its lien claim to specific units. As we discuss *infra,* under the Mechanic's Lien Act, lien claims must be apportioned only as to those who purchase property from the owner with whom the lien claimant contracted. As to original owners, no apportionment is required. Judge Merrick held that because the Nortons had signed a purchase contract for their unit before the lien arose, the Nortons were not purchasers but instead were already owners who were not entitled to have the lien claim apportioned as to them. Accordingly, Judge Merrick dismissed Argonne's cross-claim as to the Moores, who he ruled were purchasers, but not as to the Nortons.

In the Nortons' appeal, the Nortons dispute Judge Merrick's finding that they were owners. Curiously, appellee-Argonne offers no defense of the Judge's rationale and indeed agrees with the Nortons that they were purchasers and not owners. Instead, Argonne reasserts its separate statutory construction of the Mechanic's Lien Act and the Condominium Property Act which Judge Merrick rejected when he dismissed Argonne's cross-complaint as to the Moores. The only dispute between these parties, then, is what information those two acts require to be included in lien claims so as to make the claims effective against the Nortons and Moores.

## I

We first consider whether Judge Merrick erred in holding that the Nortons were owners, not purchasers, and thus not entitled to the procedural protections which the Mechanic's Lien Act gives to purchasers.

The Mechanic's Lien Act provides, in relevant part:

1. Person entitled to lien—Extent of lien

§ 1. Any person who shall by any contract or contracts . . . with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract or land . . . has a lien upon the whole of such lot or tract of land . . . This lien extends to an estate in fee, for life, for years, or any other estate or any right of redemption, or other interest which the owner may have in the lot or tract of land at the time of making such contract or may subsequently acquire . . . This lien attaches as of the date of the contract.

\*　　\*　　\*　　\*　　\*　　\*

7. Limitation as against third parties—Claim for lien—Errors—Proof of delivery sufficient—Separate lots or buildings

§ 7. No contractor shall be allowed to enforce such lien against . . . any . . . purchaser, unless . . . he or she shall . . . file in the office of the recorder of deeds . . . a claim for lien . . . which shall consist of . . . a sufficiently correct description of the lot, lots or tracts of land to identify the same. . . .

Ill.Rev.Stat. ch. 82, § 1 *et seq.*

Illinois courts have expanded § 7 to require that where the lien arises against multiple properties, the claim for lien must apportion the amount due for each property and state the date work was completed on each property. *Schmidt v. Anderson,* 253 Ill. 29, 97 N.E. 291 (1911); *In the Matter of Phillips Construction Company, Inc.,* 434 F.Supp. 26 (N.D.Ill.1977); *Dougherty-Janssen Company v. Danage Enterprises, Inc.,* 80 Ill.App.3d 1112, 36 Ill.Dec. 443, 400 N.E.2d 1023 (3d Dist.1980); *First Federal Savings and Loan Association of Chicago v. Connelly,* 107 Ill.App.3d 298, 63 Ill.Dec. 93, 437 N.E.2d 742 (1st Dist.1982), *leave to ap-*

peal granted, No. 57055 (oral argument heard January 27, 1983).

In both his original opinion and his opinion on reconsideration, Judge Merrick concluded that the Nortons were owners because they had already signed a purchase contract at the time the construction contract was let and because they knew that the construction work was being done. Judge Merrick's analysis centered on cases decided near the turn of the century where equitable owners or people with certain attributes of ownership were held to be owners for purposes of the Mechanic's Lien Act.[1]

As we hold below, when the Declaration was recorded for this property on March 20, 1979, the property became subject to the provisions of the Condominium Property Act. Ill.Rev.Stat. ch. 30, § 306. Argonne's June 1, 1979, lien on that property therefore must be interpreted in accordance with the Condominium Property Act.

■ The Condominium Property Act defines "Purchaser" as "any person or persons other than the Developer who purchase a unit in a bona fide transaction for value." Ill.Rev.Stat. ch. 30, § 302(p). There is no question that the Nortons meet the definition of purchaser. The Act defines "Unit Owner" as "the person or persons whose estates or interests, individually or collectively, aggregate fee simple absolute ownership of a unit." Ill.Rev.Stat. ch. 30, § 302(g). In Illinois, fee simple absolute "includes the whole title. It embraces any and all estates that may be carved therefrom or are included therein." *United States v. Sunset Cemetry Co.,* 132 F.2d 163 (7th Cir.1942). Since the Nortons had signed a purchase contract for their unit at the time Argonne's lien arose, the Nortons might have had some ownership interest which, together with the seller's interest, could have aggregated fee simple absolute ownership of the unit such as to bring the Nortons under the definition of "Unit Owner."

Illinois law adopts the principle that under certain circumstances, a contract purchaser takes equitable title to the land. As discussed in *Shay v. Penrose,* 25 Ill.2d 447, 185 N.E.2d 218 (1962),

Equitable conversion is the treating of land as personalty and personalty as land under certain circumstances. Hence, *as between the parties and those claiming through them,* when the owner of land enters into a valid and *enforceable* contract for its sale he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the eligible owner and holds the purchase money in trust for the

---

1. Judge Merrick's opinion states, "We follow established precedent in holding that the purchasers became 'owners' at whatever time they became contract purchasers or otherwise obtained an enforceable right to obtain title to the property on payment of the purchase price." *In the Matter of Argonne Construction Co., Inc.,* 10 B.R. 570, 575 (Bkrtcy.N.D.Ill.1981). As authority for this proposition, Judge Merrick cites a law review note which states that the term "owner" in the Mechanic's Lien Act "includes the owner of an equitable interest in the property, with the lien attaching to this equitable interest." Note, "The Illinois Condominium Act and the Illinois Mechanic's Lien Act: A Transactional Analysis," 25 DePaul L.Rev. 465, 472 (1975). That note cites as authority three Illinois cases: *City of Salem v. Lane & Bodley Co.,* 189 Ill. 593, 60 N.E. 37 (1901); *Springer v. Kroeschell,* 161 Ill. 358, 43 N.E. 1084 (1896); and *Paulson v. Manske,* 126 Ill. 72, 18 N.E. 275 (1888). While we do not take issue with these cases or with the note author's analysis, we believe that these cases do not answer the question at issue here and that therefore Judge Merrick's reliance on them was misplaced. These cases simply hold that one who has an equitable interest in land *can be* an owner for purposes of § 1 of the Mechanic's Lien Act. But that does no more than state what the statute provides: "This lien extends to an estate in fee, for life, for years, or any other estate or any right of redemption, or other interest which the owner may have in the land . . . ." Ill.Rev.Stat. ch. 82, § 1.

Our case does not call into question whether a contract purchaser *can be* an owner at the time a construction contract is let. Rather, our case turns on whether the Nortons, who had signed a purchase contract when the construction contract was let, *were* owners at that time. That question depends on the particulars of the individual purchase contract, which we analyze *infra,* not on the mere fact that the Nortons signed a purchase contract.

736

seller. The conversion takes place at the time of entering the contract. It stems from the basic principle that equity regards as done that which ought to be done.

*Id.,* at 449, 185 N.E.2d at 219–220, emphasis supplied.

Since the Nortons had signed a purchase contract on their condominium at the time Argonne's lien arose, they could have had equitable ownership and therefore could have been "Unit Owners" under the Condominium Property Act. But, as indicated in the underlined passages above, to hold that the Nortons were equitable owners and therefore "Unit Owners" under the Condominium Property Act, we must decide whether, at the time the lien arose, (1) the Nortons' purchase contract was enforceable, and (2) if so, whether the Nortons' equitable ownership may redound to the benefit of Argonne, which was not a party to the contract and which does not even assert that the Nortons were equitable owners.

*(1) The Enforceability of the Contract*

■ In order to work a conversion, the contract must be such that a court of equity could specifically enforce it against an unwilling party. *In re Estate of McDonough,* 113 Ill.App.2d 437, 251 N.E.2d 405 (3d Dist. 1969). A contract is considered unenforceable where it contains a condition precedent which must be performed by one party before the other party is obligated to perform. *Dodson v. Nink,* 72 Ill.App.3d 59, 28 Ill.Dec. 379, 390 N.E.2d 546 (2d Dist.1979). Equitable conversion comes into play only when the contract has become enforceable. *Id.*

At the time Argonne's lien arose, at least two conditions in the Nortons' purchase contract were still executory (meaning that there was the possibility that the contract would never be consummated). The contract contained a one-page rider which was captioned "CONDITIONS AND STIPULATIONS" and a two-page rider setting forth further contingencies. Paragraph 2 of the "CONDITIONS AND STIPULATIONS" rider gave the purchaser the option to terminate the contract if the seller failed to

meet certain requirements regarding the title commitment. Paragraph 2 of the second rider allowed the buyer to withhold final payments in the event that the unit was not completed on time and full and final lien waivers were not delivered.

■ It appears, therefore, that at the time Argonne's lien arose, the Nortons did not have an equitable ownership interest in the condominium unit because executory conditions precedent existed in the contract which could have resulted in the contract becoming unenforceable. *See John J. Calnan Co. v. Talsma Builders, Inc.,* 77 Ill. App.3d 221, 32 Ill.Dec. 695, 395 N.E.2d 1076 (4th Dist.1979) (where subcontractor did not provide lien waivers as required by the contract, contractor's obligation to pay subcontractor was extinguished); *Dodson v. Nink, supra.* Therefore, we hold that the Nortons did not have equitable title to the condominium unit at the time the lien arose and thus did not have any ownership interests such that they could be Unit Owners for the purposes of either the Condominium Property Act or the Mechanic's Lien Act.

*(2) Could Argonne Be Beneficiary of Any Equitable Ownership Interest Which the Nortons Might Have Had?*

Even if we were to hold that the Nortons' purchase contract did imbue them with certain attributes of equitable ownership, we would have serious reservations whether those attributes should benefit Argonne. The doctrine of equitable conversion "evolved to carry out the intention of the parties to the contract. To that end it acts upon the rights of the parties to the contract and those who claim under them. But it has frequently been held and stated that it should have no effect upon the rights of others." *First National Bank of Highland Park v. Boston Insurance Company,* 17 Ill.2d 147, 150–51, 160 N.E.2d 802, 804 (1959). *See also Shay v. Penrose, supra.* Here, Argonne was not a party to the contract by which Judge Merrick held the Nortons to be equitable owners. Further, Argonne is not claiming under either of the parties to the contract but rather is assert-

ing a separate claim of its own against the Nortons. Indeed, Argonne does not even assert that the Nortons were equitable owners but instead agrees with the Nortons that they are purchasers. Under these circumstances, we cannot uphold Judge Merrick's application of the doctrine of equitable conversion for the benefit of Argonne.

■ In sum, we hold that the Nortons were not equitable owners of their condominium unit at the time Argonne's lien arose, and that even if they were, Argonne should not benefit from any such ownership interest. Accordingly, the Nortons are entitled to the greater notice which § 7 of the Mechanic's Lien Act affords to purchasers as opposed to owners.

## II

Although we conclude that Judge Merrick erred in No. 81 C 7196, we could still affirm him if his opinion were valid for other reasons. Argonne urges that we affirm based on its separate statutory construction of the Mechanic's Lien Act and the Condominium Property Act. Since the identical question arises in No. 81 C 7295, our disposition of the two cases will turn on how the Condominium Property Act interacts with the Mechanic's Lien Act and whether those two acts construed together required that Argonne apportion its lien claim individually against the Nortons and Moores.

The Condominium Property Act provides, in relevant part:

§ 6. Recording—Effect. Upon ... recording of the declaration [of condominium] the property shall become subject to the provisions of this Act ....

\* \* \* \* \* \*

**2.** Argonne argues that none of these cases extended § 7's requirements to individual units but rather dealt with separate, non-contiguous buildings. That is correct. However, in view of our holding that § 9.1 of the Condominium Property Act restricts Argonne's liens to the individual units within the condominium building on which work was performed, we believe the rationale of these cases inescapably attaches to the condominium situation. As the

§ 9.1 Other liens; attachment and satisfaction. Subsequent to the recording of the declaration, no liens of any nature shall be created or arise against any portion of the property except against an individual unit or units. No labor performed or materials furnished with the consent or at the request of a particular unit owner shall be the basis for the filing of a mechanic's lien against any other unit.

\* \* \* \* \* \*

Each mortgage and other lien, including mechanics liens, securing a debt in the development of land submitted to the provisions of this Act for the sale of units shall be subject to the provisions of this Act, subsequent to the conveyance of a unit to the purchaser.

Ill.Rev.Stat. ch. 30, § 301 *et seq.*

■ Our inquiry focuses on the first two paragraphs of § 9.1 of the Condominium Property Act. The first paragraph of § 9.1 states, "Subsequent to the recording of the declaration [of condominium], no liens of any nature shall be created or arise against any portion of the property except against an individual unit or units." Here, the recording of the declaration occurred on March 20, 1979, and Argonne's lien arose on June 1, 1979. Therefore, Argonne's lien, under the first paragraph of § 9.1, could have arisen only against an individual unit or units. It follows that in order for Argonne's lien to have complied with § 7 of the Mechanic's Lien Act as to subsequent purchasers Moores and Nortons, Argonne's lien claim would have had to apportion the amount due on each unit and to state the date when the work was completed for each unit. *Schmidt; Matter of Phillips; Dougherty-Janssen;* and *First Federal, supra.*[2]

court stated in *Phillips,* the purpose of the apportionment requirement is to allow third parties to "determine whether an individual building is encumbered." 434 F.Supp. at 28. If, under the Condominium Property Act, a lien can arise only *against an individual unit* or units, and the claim for lien in no way allocates the lien among those units but instead simply describes the entire building, the purchaser is not given the protection from liens which § 7

Argonne argues, however, that the second paragraph of § 9.1 applies here, not the first paragraph. Argonne argues that the second paragraph requires that where, as here, the lien secures a debt incurred in the development of land, the lien is subject to the Act *only if* it arises subsequent to the conveyance of a unit to a purchaser. Argonne argues that since its lien arose on June 1, 1979 (prior to the conveyance by the developer of the Moores' and Norton's units), the Condominium Property Act does not apply and Argonne was not required to apportion its lien claim to individual units.

There is no reported appellate case construing § 9.1. Also, the parties have not cited, nor have we been able to find, any legislative history to illuminate our inquiry. We therefore must construe it on our own.[3]

This has not been an easy task, but after considerable reflection we have arrived at the following conclusions. The first paragraph applies to all liens which arise for the first time *after* recordation. The second paragraph applies to liens which attached to the property during development and *prior* to recordation. The first paragraph does not cover such liens, and obviously some provision must be made for their treatment in the process of transition from non-condominium to condominium (multiple-unit) ownership. The second paragraph recog-

nizes that in the interim between recordation and conveyance of units there is still the same, not a new ownership. There are no separate unit owners. Therefore, paragraph two provides that these liens shall be subject to the Act when, but not before, there is separate ownership—i.e., at the time of conveyance of separate units. Apparently an apportionment of the lien to the separate units is to take place at the time the units are conveyed. This construction assures that purchasers of units in a building which was subject to a pre-recordation lien will assume their fair share of that lien.

■ Argonne's lien arose after recordation of a declaration of condominium. Therefore, under this statutory construction, the first paragraph of § 9.1 applies and the lien could have attached only to a specific unit or units. Under the Mechanic's Lien Act, Argonne's lien claim, to be effective against subsequent purchasers Moores and Nortons, must have apportioned the lien to each specific unit or units. Since Argonne's lien claim did not do this, it cannot be enforced against either the Moores or the Nortons.

CONCLUSION

For the above reasons, the judgment of the bankruptcy court in Case No. 81 C 7196

of the Mechanic's Lien Act and the cases envision. We believe that the Condominium Property Act puts individual unit purchasers in the same position as individual building purchasers in previous cases. Argonne offers us no reason not to extend the rationale of these cases to individual condominium units except that previous cases did not involve such units.

We also note that the third paragraph of § 9.1 of the Condominium Property Act allows individual units purchasers in effect to buy their way out of their share of liens against their unit and common elements by paying their proportional amount of the indebtedness attributable to their unit. This provision could not be given effect if the lien claimant is allowed not to apportion the lien claim, as Argonne would have us do.

3. In their brief, the Moores cite a case from the Chancery Division of the County Department of the Circuit Court of Cook County, *Dynamic Acoustics, Inc. v. American National Bank and Trust Company*, No. 79 CH 243 (1980). There, the court granted a motion to dismiss the contractor's complaint for foreclosure of mechan-

ic's lien. The moving parties there had argued exactly the same construction of § 9.1 that the Moores and Nortons have submitted to this court. Since the court in *Dynamic Acoustics* did not issue an opinion with its order, we have no way of knowing whether the court was persuaded by the movants' construction or whether the case was decided on some other grounds. While we cannot give *Dynamic Acoustics* great weight for this reason, we do note that its result is consistent with the result we reach here and that Argonne does not discuss *Dynamic Acoustics* in its reply brief or try to distinguish it in any way.

The parties each cite a rule of statutory construction that where two provisions appear to conflict, the more specific provision controls the more general one. Each party argues that the provision which it wishes to apply to this case is the more specific one. As between the first and second paragraphs of § 9.1, we are unable to find any basis for saying that either is more specific or more general than the other.

is reversed and the Nortons' motion to dismiss Argonne's amended crossclaim is granted. In Case No. 81 C 7295, the judgment of the bankruptcy court granting the Moores' motion to dismiss Argonne's amended cross-claim is affirmed.