**In re Frank Anthony HEFNER, Mildred Mae Hefner, Debtors.**

**William G. Schwab, Trustee for Mildred Mae Hefner, Plaintiff,**

**v.**

**Birches III Property Owners Association, Inc., Defendant.**

**Bankruptcy No. 5–98–03487. Adversary No. 5–98–00339A.**

United States Bankruptcy Court, M.D. Pennsylvania.

Jan. 25, 2001.

William G. Schwab, Lehighton, PA, for Plaintiff.

Gerard J. Geiger, Stroudsburg, PA, for Defendant.

P. Patrick Morrissey, Stroudsburg, PA, for Debtors.

*OPINION* [1]

JOHN J. THOMAS, Bankruptcy Judge.

Before the Court is the Complaint of William G. Schwab, Trustee for Mildred Mae Hefner, seeking to recover the conveyance of certain assets of the Debtors as fraudulent conveyances under the dictates of 11 U.S.C. § 548(a)(1)(B). [2]

11 U.S.C. § 548(a)(1)(B) provides, in its entirety, as follows:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

The facts are as follows. Frank Hefner was Treasurer of the Birches III Property Owners Association, Inc. (POA) beginning in 1990. In 1998, following an audit of the POA's accounts, a criminal investigation was commenced against Mr. Hefner and subsequently, criminal charges were filed against him in Monroe County, Pennsylvania. A civil action was also filed by the POA against Mr. Hefner in the Court of Common Pleas of Monroe County to No.1958 Civil 1998 wherein, based upon allegations of embezzlement by Mr. Hefner of the POA's accounts and monies, the POA sought a judgment in excess of $25,000 against Mr. Hefner. Initially, the amount sought by the POA approximated $42,000. This sum was later amended to be in excess of $50,000.

Thereafter, a settlement agreement was entered into between the POA and Mr. Hefner, dated May 22, 1998. (Exhibit P–3.) While the settlement agreement was signed by both Debtors, the preamble recites the agreement was being entered into between the POA and Frank A. Hefner. Among other terms of this agreement, Mr. Hefner was to pay the POA a lump sum cash payment due upon the signing of the agreement in the amount of $28,000. Additionally at paragraph 6, Mr. Hefner was required to transfer certain real property to the POA. The property was owned jointly, as tenants by the entireties, with his wife, Mildred, and more particularly described as Lot # 23, The Birches Three, Section 2. Important to consideration of this matter is paragraph 12 of the agreement which reads, "Hefner's wife, Mildred M. Hefner, joins in this Agreement because of her joint interest in the real property. She agrees to transfer title to the foregoing lot to POA and agrees to be bound by the terms of this settlement agreement." It is the transfer of the $28,000 in cash and the deed to the afore-

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

2. Mr. Schwab is also the Bankruptcy Trustee for Frank Anthony Hefner. Schwab initiated this adversary naming only Mrs. Hefner as Plaintiff.

said lot which are the subject of the instant complaint.

The Trustee primarily argues that these transfers of both cash and real property were fraudulent conveyances under § 548 of the Bankruptcy Code as to all creditors of Mrs. Hefner. He supports that argument by claiming Mrs. Hefner received less than a reasonably equivalent value in exchange for those transfers. Furthermore, the transfers were made solely for the benefit of Mr. Hefner to settle both the criminal and civil actions that were brought against him alone. The POA responds that Mrs. Hefner received not only valuable consideration, but reasonably equivalent value in exchange for those transfers because the POA agreed not to bring either a civil action or raise criminal charges against her based upon her unjust enrichment and knowledge of the embezzlement of the POA funds by Mr. Hefner.

█ Prior to the presentation of evidence, the parties stipulated the transfers referenced in the settlement agreement were actually made. Also, during the Trustee's testimony, the parties stipulated there was no dispute that the Debtors were rendered insolvent by the transfers. Resolution of this adversary depends on a determination of whether Mrs. Hefner received reasonably equivalent value in exchange for the transfers. The Trustee has the burden of establishing that the Debtor received less than a reasonably equivalent value. *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635 (3rd Cir. 1991), 5 Lawrence P. King, et al., Collier on Bankruptcy ¶ 548.10 (Burden of Proof) at 548–80 (15th ed. rev.2000).

During the Trustee's case in chief, the only witness was the Trustee who testified that, after a review of the petitions and schedules, he had determined the transfers were fraudulent under § 548 because there did not seem to be any corresponding consideration received by Mrs. Hefner. Furthermore, even though the property transferred was entireties property, it was, nonetheless, free and clear of any liens and when viewed in light of the fact that the schedules reflected all creditors were joint creditors, the Trustee concluded the property could be sold by the estate and distributions made to all creditors. Moreover, a review of the circumstances surrounding the settlement of the criminal and civil actions filed against Mr. Hefner together with all the written documentation relating thereto, supported the Trustee's contention that Mrs. Hefner received no consideration for the transfers. The Trustee, therefore, requested the return of the $28,000 and the equivalent monetary value of the lot. Because the complaint in state court requested approximately $42,000 by the POA from Mr. Hefner, the Trustee calculated that the value of the lot approached $14,000. The Trustee then rested his case.

Based upon the Trustee's testimony and a review of the documentation submitted into evidence and certain stipulations regarding the elements of § 548 entered onto the record by the parties, the Court finds the Trustee met his burden of proof by establishing that Mrs. Hefner did not receive a reasonably equivalent value for the transfers of her assets to the POA. The Court makes this determination even though Mrs. Hefner did not testify.

5 Lawrence P. King, et al., Collier on Bankruptcy ¶ 548.10 (Burden of Proof) at 548–80 (15th ed. rev.2000) provides the following:

Although the ultimate burden of proof does not shift, during the progress of the suit the burden of going forward with the evidence to rebut a *prima facie* case may shift. The trustee is not necessarily entitled to prevail merely because he establishes a fraudulent trans-

fer by the debtor, however. Even when the trustee has satisfied the burden of proof and established that the debtor made a transfer or incurred an obligation that is fraudulent under section 548, the transfer or obligation may not be subject to avoidance if made to a good faith transferee or obligee for value. The party that seeks to be established as a good faith transferee or obligee within this saving clause has the burden of proof (risk of non-persuasion) thereon. (Footnotes omitted.)

The Trustee has not questioned the "good faith" of the POA. The POA argues that Mrs. Hefner received reasonably equivalent value for the transfers in the form of a forbearance by the POA from bringing either criminal charges against her or adding her to the civil action initiated against her husband. The POA called to the stand the Hefners' bankruptcy lawyer, Patrick Morrissey, and Pat Crowley, President of the POA. The Trustee objected to any evidence, oral or written, which, he asserted, violated the parole evidence rule. He claimed the POA was attempting to alter the terms of an unambiguous settlement agreement representing the total agreement among, not only Mr. Hefner and the POA, but also Mrs. Hefner. If there was a release of liability intended for Mrs. Hefner in consideration for the transfer of assets to the POA, there was nothing in the agreement to memorialize that release.

■ Both parties cited *HCB Contractors v. Liberty Place Hotel Associates,* 539 Pa. 395, 652 A.2d 1278 (1995), for the proposition that the parole evidence rule provides that if a written agreement is intended to encompass the entire agreement between the parties and is unambiguous on its face, extrinsic evidence cannot be used to vary, modify, or supercede the written agreement.[3] The Court accepts this proposition and, applying it, finds there is no parole evidence rule violation. I make this finding after reviewing the terms of the settlement agreement which was entered into between Mr. Hefner and the POA. I find this written settlement agreement encompassed the entire agreement and understanding between the POA and Mr. Hefner. I cannot make a similar finding in regard to the POA and Mrs. Hefner. I find there was an oral agreement between the POA and Mrs. Hefner not encompassed within the terms of the written agreement presented into evidence. I further find upon review of the provisions of paragraph 12 as set forth above that Mrs. Hefner was simply an accommodation party to the written agreement between the POA and Mr. Hefner.

■ With the burden shifting to the POA, the major issue for resolution was whether a release of liability, both civilly and criminally, between the POA and Mrs. Hefner is "reasonably equivalent value" for the transfers in question. I find that the release of claims against a debtor can be considered "reasonably equivalent value" under the dictates of § 548(A)(2)(a). *In re Erie Marine Enterprises, Inc.,* 213 B.R. 799 (Bankr.W.D.Pa.1997) and *In re Pinto Trucking Service, Inc.,* 93 B.R. 379 (Bankr.E.D.Pa.1988) (compromise of a dispute can supply the element of consideration in a contract.) Fraudulent conveyance laws are intended to protect creditors of an estate. "The purpose of the laws is estate preservation; thus, the question whether the debtor received reasonable

---

**3.** We look to state law on the applicability and function of the "Parole Evidence Rule" because it is actually a rule of substantive law governed by state law as opposed to an exclu-sionary rule of evidence. 22 Fed. Prac. & Proc. Evid. § 5200 (Rule 402) (Wright & Graham Treatise Supp.2000).

value must be determined from the standpoint of the creditors." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 646 (3rd Cir.1991).

█ Mr. Morrissey testified he represented both Debtors in the bankruptcy but did not represent Mr. Hefner in the resolution of the criminal complaint. Mr. Morrissey testified that entering into the settlement agreement with the POA was not only to end the cases against Mr. Hefner but was to prevent the actions against Mrs. Hefner, both civilly and criminally, from being initiated by the POA. Mr. Morrissey stressed that he reached an agreement between the POA and Mr. Hefner but that Mrs. Hefner was needed to join in that written agreement to provide the funding for its fulfillment because all the property to be transferred was held by the Hefners as tenants by the entireties. Other terms of the oral agreement between the POA and Mrs. Hefner, such as the releasing of any and all liability of Mrs. Hefner to the POA, were not included in this written agreement for reasons that are not of record because of an assertion of the attorney-client privilege. Mrs. Hefner did not enter into a separate written settlement agreement because of "personal reasons" and it was she who asked that a written agreement with the POA regarding her potential liability not be memorialized.

A review of Mr. Morrissey's testimony supports my earlier finding that the written settlement agreement was an agreement only between Mr. Hefner and the POA, and that Mrs. Hefner signed on only as an accommodation party. A conclusion can be drawn that there was a threat of both a criminal complaint and a civil action being initiated by the POA against Mrs. Hefner. What value, if any, did the release of those claims confer upon the creditors of Mrs. Hefner? Mr. Morrissey testi-

fied that he did an analysis of the potential civil and criminal claims that could be made against Mrs. Hefner. He opined, in all likelihood, Mrs. Hefner would be found not guilty of the criminal charges. As for the civil action, he testified the odds of success by the POA were more likely than not on an unjust enrichment claim, but he could not determine that for sure.

After declining to call Mrs. Hefner as a witness, the POA called Ms. Pat Crowley, President of the POA, who verified earlier testimony that the Board of the POA authorized its lawyer to threaten a criminal action and a civil complaint against Mrs. Hefner. Ms. Crowley also provided the only testimony concerning valuation of the real property indicating that it was listed with a real estate agent with an asking price of $17,900. It was contemplated the asking price might be lowered to $14,000. During cross-examination, Ms. Crowley testified that the original listing with a different real estate agent was at an asking price of $22,000. Ms. Crowley's testimony added very little to the determination of what value, if any, Mrs. Hefner received by the POA releasing her of liability on both civil and criminal actions. While subjectively Mrs. Hefner may have received some value by the POA dropping charges against her husband and withdrawing the threat to bring charges against her in exchange for the transfers, objectively, there is nothing on the record to indicate what value was actually transferred to Mrs. Hefner. The record shows that the criminal action would probably have been ineffective in that a conviction would be unlikely. Possibly a judgment on the civil action would have been entered against Mrs. Hefner. The Court is only left to speculate.

What benefit did Mrs. Hefner receive from the deposit of embezzled funds from the POA into the Hefners joint checking

account? The only evidence on the record was a stipulation by the Trustee that household expenses were paid from that joint checking account but he could not stipulate that Mrs. Hefner directly benefitted by the deposit of the funds. The POA could not trace embezzled monies paid into the account to the specific payment of household bills for the benefit of Mrs. Hefner.

Based upon the foregoing, I find the Trustee has met his burden of proof under 11 U.S.C. § 548 of establishing the elements of a fraudulent transfer of assets from Mrs. Hefner to the POA. I further find the POA has failed to come forth with a valid defense under § 548.

 I will now address the remedy that can be afforded the estate. Both parties seem to be in fundamental agreement concerning the law regarding tenancy by the entireties as established in Pennsylvania. The entireties estate cannot be destroyed by the act of one spouse to the exclusion of the other without consent by both spouses. *Shapiro v. Shapiro*, 424 Pa. 120, 224 A.2d 164 (1966). Furthermore, an entireties estate cannot be severed or conveyed away by the independent action of one spouse. *Estate of Maljovec*, 412 Pa.Super. 80, 602 A.2d 1317, 1320 (1991). Finally, under Pennsylvania law, property held as tenants by the entireties is not exempt from process by a creditor who is owed a debt by both partners jointly. *Napotnik v. Equibank and Parkvale Savings Assoc.*, 679 F.2d 316, 320 (3rd Cir.1982), *In re Houck*, 184 B.R. 21 (Bankr.E.D.Pa. 1995).

With these legal underpinnings in mind, the POA argues the Trustee is overreaching in his attempt to avoid the transfers because he is trying to set aside only Mrs. Hefner's interest in the property thereby converting the property to a tenancy in common. Furthermore, he is attempting to act only on Mrs. Hefner's behalf to reconvey her interest back to her estate. By doing so, he is trying to transfer title to the property at the behest of only one spouse and not both spouses, thus depriving the estate of entireties property. The Trustee responds to these arguments asserting the entireties property is not exempt from process under Pennsylvania law and he has every right, under § 548, to obtain the property from the POA to make it available to the Debtors' joint creditors. As such, he does this in his role representing all creditors of the estate and not Mrs. Hefner individually. Additionally, he argues, the POA is not a creditor of Mrs. Hefner. The conveyance, therefore, in the final analysis takes assets out of the reach of legitimate joint creditors that would have otherwise been available to them.

The POA has argued that it has a claim against both of the Debtors. I find the POA has, indeed, asserted a claim, albeit unliquidated, against Mrs. Hefner.

 Property held by a Debtor as a tenant by the entirety is property of the estate. 11 U.S.C. § 541. *Hadley v. Koehler*, 6 B.R. 203, 204 (Bankr.M.D.Fla.1980). A Trustee may, under certain conditions, sell one hundred percent (100%) of property co-owned by the estate, even though a co-owner is not in bankruptcy. 11 U.S.C. § 363(h). *Murray v. Murray*, 31 B.R. 499, 502 (Bankr.E.D.Pa.1983). Moreover, there is nothing inconsistent with the provisions of the Bankruptcy Code and tenancy by the entireties law as cited by the POA. The Trustee can sell the entire interest held in tenancy by the entireties even though only one spouse has filed bankruptcy. The Court conceives of no impediment to the Trustee filing a fraudulent conveyance action on behalf of one spouse to void a transfer and, thus, bring tenancy by the entireties property back

into an estate. The Court hereby finds the transfer of the lot from the Debtors to the POA is avoided as a fraudulent transfer thus revesting the lot into the entireties title.

The Court is further poised to enter judgment in favor of Mr. Schwab, as Trustee for Mrs. Hefner, against the POA in the amount of $28,000 representing funds transferred to the POA under the terms of the above-referenced settlement agreement. This ruling, however, might only benefit Mrs. Hefner's estate to the exclusion of Mr. Hefner's estate even though the original transfer of funds was from entireties property. The Trustee states that initiating this adversary only on behalf of Mrs. Hefner is irrelevant to the outcome.[4] Because my ruling might directly and significantly affect the rights of Mr. Hefner's creditors, I believe Mr. Hefner's joinder in this adversary is crucial to complete relief among the parties including the creditors of both of the Debtors' estates. Pursuant to Federal Rule of Civil Procedure 19 as made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7019, the Court, under certain circumstances, may order that a person be made a party to an adversary. The Trustee is hereby directed to take the action necessary to join the estate of Mr. Hefner as a party to this action or to file with the Court, pursuant to Federal Rule of Civil Procedure 19(c), a statement setting forth the reasons for the nonjoinder of the estate of Mr. Hefner, on or before February 24, 2001. I will not enter final judgment consistent with this Opinion for a period of forty (40) days from the date of this Opinion to allow the Trustee to add the bankruptcy estate of Mr. Hefner as a Plaintiff to this adversary proceeding. After the estate of Mr. Hefner has been

added as a party Plaintiff, I will then enter judgment in favor of the estate of both of the Plaintiffs against the POA in the amount of $28,000.

---

4. While the schedules reflect that all creditors listed are joint creditors of both Debtors' estates, I do not make that a finding of fact or law.