*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

**File Name: 09b0005n.06**

| | | |
|---|---|---|
| In re: MIDWAY MOTOR SALES, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | Nos. 08-8109 and 08-8110 |
| GENERAL MOTORS ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| | ) | |
| DAVID A. FLYNN and DAVID A. FLYNN, INC., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Youngstown.
Bankruptcy Case No. 04-42726; Adv. No. 04-4147.

Argued: May 20, 2009

Decided and Filed: July 6, 2009

Before: BOSWELL, FULTON, and McIVOR, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Richard J. Thomas, HENDERSON, COVINGTON, MESSENGER, NEWMAN & THOMAS CO., L.P.A., Youngstown, Ohio, for Appellants. Jeffrey A. Lipps, CARPENTER, LIPPS & LELAND LLP, Columbus, Ohio, for Appellee. **ON BRIEF:** Richard J. Thomas, Amanda J. Banner, HENDERSON, COVINGTON, MESSENGER, NEWMAN & THOMAS CO., L.P.A.,

1

Youngstown, Ohio, for Appellants. Jeffrey A. Lipps, Michael H. Carpenter, Angela M. Paul Whitfield, CARPENTER, LIPPS & LELAND LLP, Columbus, Ohio, for Appellee.

———————————

## OPINION

———————————

MARCI B. McIVOR, Bankruptcy Appellate Panel Judge. David A. Flynn and David A. Flynn, Inc. (collectively, "Flynn") appeal four orders of the bankruptcy court (1) denying Flynn's motion to extend the time for filing a proof of claim, (2) granting the chapter 7 Trustee's ("Trustee") motion to strike affirmative defenses and dismiss Flynn's cross-claim, (3) denying the Trustee's motion for an order pursuant to Federal Rule of Bankruptcy Procedure 9019 to approve settlement of claims, and (4) granting summary judgment in favor of GMAC LLC ("GMAC") and against Flynn.

For the reasons that follow, the bankruptcy court's orders granting the Trustee's motion to strike affirmative defenses and dismiss Flynn's cross-claim, denying the Trustee's motion to approve settlement of claims, and granting summary judgment in favor of GMAC and against Flynn are AFFIRMED. The order denying Flynn's motion to extend the deadline for filing proof of claim is a final order and the appeal was not filed within the ten day appeal period provided in Federal Rule of Bankruptcy Procedure 8002(a). *Vicenty v. San Miguel Sandoval* (*In re San Miguel Sandoval*), 327 B.R. 493, 505 (B.A.P. 1st Cir. 2005) (order denying creditors' motion to file a late proof of claim is a final appealable order). Therefore, the Panel lacks jurisdiction over that appeal.

## ISSUES ON APPEAL

The issues presented on appeal are:

(1) whether the bankruptcy court abused its discretion in striking the second through seventh affirmative defenses of Flynn as they relate to count II of the Trustee's cross-claim, and dismissing Flynn's cross-claim;

(2) whether the bankruptcy court abused its discretion in denying the Trustee's Rule 9019 motion for an order approving settlement of claims; and

2

(3) whether the bankruptcy court erred in granting summary judgment in favor of GMAC and against Flynn.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b), (c)(1). The BAP has jurisdiction to hear appeals from final orders of the bankruptcy court and, with leave of the court from interlocutory orders. 28 U.S.C. § 158(a). A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations and internal quotation marks omitted).

An order granting summary judgment is a final order. *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). The orders (1) granting the Trustee's motion to strike affirmative defenses and dismiss Flynn's cross-claim, and (2) denying the Trustee's motion for an order to approve settlement of claims are interlocutory orders. *Ehre v. New York* (*In re Adirondack Ry. Corp.*), 726 F.2d 60, 62 (2d Cir. 1984) (order granting a motion to strike an affirmative defense is interlocutory); *Kmart Corp. v. Uniden Am. Corp.* (*In re Kmart Corp.*), 2004 WL 2222265, at *1-2 (N.D. Ill. Oct. 1, 2004) (same); *Argonne Const. Co. v. Norton*, 29 B.R. 731, 733 (N.D. Ill. 1983) (order granting a motion to dismiss cross-claim is interlocutory).

Nonfinal orders merge with the final judgment in a case and may be appealed by filing a timely notice of appeal of the final judgment. *Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 428 (6th Cir. 1992) ("[I]t is well settled in this circuit that an appeal from a final judgment draws into question all prior non-final rulings and orders."). The order granting summary judgment was timely appealed. Accordingly, the interlocutory orders on appeal merge with the final order granting summary judgment and are subject to this Panel's review.

3

The bankruptcy court's order granting GMAC's motion for summary judgment is reviewed *de novo*. *Gold v. FedEx Freight East, Inc.* (*In re Rodriguez*), 487 F.3d 1001, 1007 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *In re Morgeson*, 371 B.R. at 800. Bankruptcy court orders striking affirmative defenses and dismissing cross-claims, and disapproving a proposed settlement or compromise are reviewed for abuse of discretion. *Hatchett v. U.S.*, 330 F.3d 875, 887 (6th Cir. 2003); *Olson v. Anderson* (*In re Anderson*), 377 B.R. 865, 868 (B.A.P. 6th Cir. 2007). "An abuse of discretion occurs only when the court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Mapother & Mapother, P.S.C. v. Cooper* (*In re Downs*), 103 F.3d 472, 480-81 (6th Cir. 1996) (citation and internal quotation marks omitted).

**FACTS**

On June 3, 2004, Midway Motor Sales, Inc. ("Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code, which was converted to chapter 7 on September 24, 2004. Debtor operated a General Motors light duty and medium duty truck dealership in New Waterford, Ohio. Carol and Michael Joseph Mercure were shareholders of the Debtor, Michael Joseph Mercure was President, and Michael James Mercure was Vice President.

On April 21, 2004, Debtor and Flynn entered into a Purchase and Sale Agreement ("Purchase Agreement") for the sale of substantially all of the Debtor's assets to Flynn. David Flynn was an experienced businessman with a long history in the automobile dealership business. Michael Joseph Mercure and Michael James Mercure signed the Purchase Agreement individually and in their representative capacities, as sellers. David Flynn signed on behalf of himself and his corporate nominee, David A. Flynn, Inc., as purchaser. The Purchase Agreement provides in relevant part:

> 1. SELLER agrees to sell to PURCHASER and PURCHASER agrees to purchase from SELLER the following assets located at SELLER'S dealership . . . free and clear of all liabilities, liens and encumbrances on the Terms and conditions set forth below:
>
> > A.     All nonobsolete, new, unused and undamaged parts and accessories for GMC LIGHT DUTY, LIGHT DUTY

4

COMMERCIAL, WORKHORSE and MEDIUM DUTY vehicles shown in the current GENERAL MOTORS Parts Books at current Cost to dealers as shown in the latest GENERAL MOTORS Parts Price Books, which are returnable to GENERAL MOTORS at closing. Any obsolete parts shall remain property of the SELLER.

B. All parts price books, shop manuals, sales training materials, sales literature, Stationery and other special supplies.

C. GENERAL MOTORS special service tools.

D. Goodwill associated with the business. The SELLERS hereby grant the use of the trade name MIDWAY MOTORS [sic] SALES INC. at no charge to PURCHASER.

E. PURCHASER agrees to sell and buyer may agree to buy some used vehicles at closing as specified by buyer at an agreed upon price.

The cost of assets listed in paragraphs 1.A-D ("Operating Assets") was $500,000, payable as follows:

3. The price for all the property in 1A, 1B, 1C, 1D is $500,000 plus returnable parts to General Motors at closing and an amount to be determined and paid after closing and shall be paid as follows:

A. Ten thousand dollars ($10,000) deposit as earnest money to be paid by the PURCHASER to SELLER'S attorney to be held in escrow when this document is executed.

B. A sum of two hundred forty thousand dollars ($240,000) to be paid in cash on the day of closing between PURCHASER AND SELLER. A sum of one hundred twenty-five thousand ($125,000) on first anniversary of closing and a sum of one hundred twenty-five thousand ($125,000) on second anniversary of closing at no interest.

The returnable parts refund referenced in paragraph 3 totaled $59,283.31. Consequently, the total purchase price for the Operating Assets was $559,283.31. Assets purchased pursuant to paragraph 1.E of the Purchase Agreement were separately priced from Operating Assets purchased under paragraphs 1.A-D. Additionally, paragraph 4 of the Purchase Agreement required Flynn to

purchase new 2004 model vehicles from the Debtor for "factory invoice price . . . less vehicle holdback" and other costs.

Prior to the closing of the Purchase Agreement, Flynn learned that the Debtor may be involved in odometer tampering. Flynn contacted Michael Joseph Mercure, the Debtor's President, who denied any involvement in odometer rollbacks. Flynn also contacted employees of both the Debtor and GMAC, the Debtor's floor plan financier, to verify the rumors. Each person Flynn spoke with confirmed that rumors were circulating regarding the Debtor's involvement in odometer tampering. However, no one could or would confirm whether the rumors were true. Despite these red flags, Flynn went forward with the closing.

Closing of the sale was delayed after GMAC demanded that Flynn pay all funds under the Purchase Agreement directly to GMAC. To resolve the dispute the parties sought direction from the Court of Common Pleas for Cuyahoga County on how and to whom the funds should be paid. The Cuyahoga County court approved the sale of Debtor's assets to Flynn on May 28, 2004, and ordered all proceeds over and above what was necessary to convey the assets to Flynn be placed in an escrow account subject to further order of the court. Closing occurred on or around June 1, 2004. At the closing, Flynn deposited $58,039.98 into an escrow account consistent with the Cuyahoga court order.

Flynn made no other cash payments to the Debtor at closing. Nonetheless, Flynn claims he made a payment of $250,000[1] at closing by virtue of certain credits which were applied to offset the purchase price for the Operating Assets. According to Flynn, the Debtor agreed that Flynn could apply the following credits against the purchase price:

1. $108,865.80 for overpayment on the purchase of new 2004 model vehicles.[2]

---

[1] A $10,000 earnest money deposit was due at signing. The bankruptcy court determined that the $10,000 earnest money deposit was not paid when the Purchase Agreement was executed, but instead was due at closing.

[2] Paragraph 4 of the Purchase Agreement required Flynn to purchase new 2004 model vehicles at factory invoice price less vehicle holdback. Flynn claims a credit for the holdback amount.

2. $3,300 related to deposits the Debtor received on new vehicle orders.

3. $17,044.22 for amounts Flynn paid toward the Debtor's payroll for the period May 19-May 26, 2004.

4. $32,935.81 for amounts Flynn paid for vehicle sales tax.

5. $29,814.19 related to Flynn's assumption of liability on outstanding warranties and credit life policies.[3]

6. $21,765.00 related to amounts Flynn paid for leased office equipment, such as phones, computers, copiers, and hoists.

The purported setoff agreement between the Debtor and Flynn was documented on two crudely handwritten pieces of paper ("Closing Sheets"). The Closing Sheets list the credits Flynn claims along with their assigned values. One of the Closing Sheets was signed by "Michael Mercure" and "Mark W. Beith," a representative of Flynn. The other Closing Sheet was not signed. The Closing Sheets differ in the credits claimed and in the values ascribed to those credits. Both Closing Sheets indicate that $250,000 was paid at closing.

Payment of the first and second $125,000 anniversary payments was due on or around June 1, 2005 and June 1, 2006, respectively. Flynn admits he withheld these payments on the grounds that he did not receive the benefit of his bargain because the value of the Debtor's business was significantly reduced as a result of the odometer fraud.

## PROCEDURAL HISTORY

Debtor filed a chapter 11 petition on June 3, 2004.[4] The case was converted to chapter 7 on September 24, 2004. On August 11, 2004, GMAC filed an adversary complaint to determine the

---

[3]Although Flynn assumed liability for outstanding warranties and credit life policies, Flynn never actually paid any money on the warranties or credit life policies.

[4]It is unclear why the Debtor filed a chapter 11 petition when it had sold substantially all of its assets to Flynn two days earlier.

validity, extent, and priority of interests against the Debtor, Flynn, and two co-escrow agents. Michael James Mercure and Carol Mercure,[5] guarantors under the floor plan financing agreement,[6] intervened as party defendants. The State of Ohio Department of Taxation also intervened as a party defendant. On December 15, 2006, GMAC filed a first supplemental complaint to determine the validity, extent, and priority of liens against Flynn, the Debtor, two co-escrow agents, and the three intervening defendants.

Count I of GMAC's two count supplemental complaint asserted that GMAC held a first priority, perfected security interest in Debtor's assets, and sought an order requiring the Defendants to assert their interests in the sale proceeds or be forever barred from doing so. Count II requested an order directing the co-escrow agents to turnover to GMAC, without setoff or recoupment, the $58,039.98 held in escrow. Count II also sought an order requiring Flynn to pay to GMAC the amounts Flynn owed under the Purchase Agreement for Operating Assets, specifically the remaining $191,960.02 due at closing, the first and second anniversary $125,000 installment payments, and any amounts received on returnable parts inventory.

The Trustee filed an answer to GMAC's complaint on behalf of the Debtor, and filed a cross-claim against Flynn and the co-escrow agents. Count II of the Trustee's cross-claim asserted that the transfer of the Debtor's assets was made without adequate consideration in violation of 11 U.S.C. § 548(a). The Trustee sought judgment against Flynn for turnover in an amount not less than $500,000 pursuant to § 542(a) and (b), or in the alternative, avoidance of the transfer of the Debtor's assets pursuant to § 548(a).

---

[5]No mention is made of Michael Joseph Mercure, and GMAC's first supplemental complaint does not name Michael Joseph Mercure as an intervening defendant.

[6]On October 5, 2006, the Cuyahoga County Court of Common Pleas found the Mercures liable to GMAC based on their guarantee in the amount of $1,743,176.18, of which $1,055,397.50 was attributed to damages related to odometer tampering.

Flynn's answer to the Trustee's cross-claim asserted ten affirmative defenses and a cross-claim against the Debtor. The following affirmative defenses were pled by Flynn: 1) failure to state a claim upon which relief can be granted; 2) waiver; 3) estoppel; 4) laches; 5) setoff; 6) accord and satisfaction; 7) negligence, recklessness, willful misconduct and/or fraud of the Debtor and/or its employees/agents; 8) payment; 9) Agreement; 10) statute of limitations. Flynn's cross-claim alleged that the Debtor purposely withheld information from Flynn regarding illegal odometer rollbacks, and that as a direct cause of Debtor's fraud, Flynn suffered damages.

The Trustee moved to strike Flynn's second through seventh affirmative defenses as they related to count II of the Trustee's cross-claim and dismiss Flynn's cross-claim. On November 21, 2006, the bankruptcy court granted the Trustee's motion to strike the affirmative defenses and the motion to dismiss Flynn's cross-claim.

On November 2, 2007, the Trustee filed a Motion for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving settlement of certain contested claims. The proposed settlement provided that Flynn would pay $337,614.14 to the Trustee and relinquish all rights to the escrow funds. The settlement was premised upon Flynn's right to setoff certain credits against the purchase price. On January 10, 2008, the bankruptcy court entered an order denying the Trustee's motion to settle claims.

On August 4, 2008, GMAC filed a motion for summary judgment against Flynn, in which GMAC asked the court to find that Flynn owed the full purchase price under the Purchase Agreement, without benefit of credits or setoff. The motion sought entry of an order directing Flynn to pay $559,283.31 to the Debtor's estate, of which $58,039.98 is held in escrow. On December 11, 2008 the bankruptcy court entered an order granting GMAC's motion for summary judgment against Flynn.

On November 6, 2008, the bankruptcy court entered a stipulated order between the Trustee and GMAC which granted GMAC leave to represent the Debtor's estate in the adversary proceeding, resolved all disputes between GMAC and the Trustee in the adversary case, provided that GMAC

held a valid claim for $1,743,176.18 secured by a first priority, perfected lien that was not subject to deductions for administrative expenses, setoff or recoupment, and provided that all proceeds recovered in the adversary proceeding, except for a $30,000 carve out, would be paid to the Trustee for distribution to GMAC.[7]

Flynn filed two identical notices of appeal, one in the adversary proceeding (BAP Case No. 08-8109) and one in the main bankruptcy case (BAP Case No. 08-8110). In response to the appeal, GMAC filed a brief and appeared at oral argument on behalf of itself and the Trustee.

## DISCUSSION

### Order Striking Flynn's Affirmative Defenses

Flynn's second through seventh affirmative defenses state that the Trustee's fraudulent transfer claim is barred by: 2) waiver; 3) estoppel; 4) laches; 5) setoff; 6) accord and satisfaction; and 7) negligence, recklessness, willful misconduct and/or fraud of the Debtor and/or its employees/agents. Flynn contends that both the Debtor and GMAC knew of the Debtor's involvement in illegal odometer tampering prior to the sale, but lied to Flynn when Flynn specifically inquired into the rollbacks. Flynn argues that he did not receive the benefit of his bargain as a result of the wrongdoing of the Debtor and GMAC and that he is entitled to assert defenses to his duty to pay under the Purchase Agreement. The bankruptcy court found that the Trustee represented the interests of creditors and lacked privity with the Debtor. Because the affirmative defenses attributed the Debtor's behavior to the Trustee, the bankruptcy court found they were not proper defenses to the Trustee's fraudulent transfer claim.

---

[7]After discovering that the Debtor had engaged in odometer tampering, GMAC implemented a remediation plan and compensated owners of the affected vehicles by either buying each vehicle back or by paying a monetary adjustment for the mileage discrepancy. *Cordray v. Midway Motor Sales, Inc.*, 2009 WL 1635782, at *2 (Ohio June 10, 2009). GMAC succeeded in arguing in the Debtor's bankruptcy case that amounts it paid in damages on behalf of the Debtor's odometer fraud were covered under its security agreement with the Debtor, giving GMAC a secured claim for $1,743,176.18.

A trustee may avoid any transfer as fraudulent provided it meets the requirements of 11 U.S.C. § 548(a). Section 548(a) provides in relevant part:[8]

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
>
> ....
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Rule 8(c) of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7008(a), requires affirmative defenses to be set forth in a responsive pleading. *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986) (affirmative defenses plead matters extraneous to the plaintiff's *prima facie* case and are waived if not pled). Rule 8(c) provides a non-exhaustive list of defenses that must be pled, and states in part:[9] "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction . . . estoppel . . . fraud . . . laches . . . waiver, and any other matter constituting an avoidance or affirmative defense."

---

[8]The Debtor's bankruptcy case was filed before October 17, 2005, the effective date of BAPCPA, so all references to the Bankruptcy Code are to the pre-BAPCPA version. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

[9]Additionally, this opinion quotes the Federal Rules of Civil Procedure as they were in effect in 2004, when this action commenced.

11

The mechanism for challenging an affirmative defense is through a motion to strike. Motions to strike are governed by Federal Rule of Civil Procedure 12(f), made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7012. Rule 12(f) provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Motions to strike require the court to evaluate the legal merits of a defense before the factual background of the case is fully developed. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). For that reason, they are disfavored. However, Rule 12(f) gives a court discretion to strike defenses which are insufficient as a matter of law, immaterial, impertinent, or scandalous. Defenses are legally insufficient if they cannot succeed under any circumstances, immaterial if they bear no essential or important relationship to the primary claim for relief, impertinent if they contain statements that do not pertain to or are unnecessary to the issues in question, and scandalous if they improperly cast a derogatory light on the objecting party. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d at 822 ("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992); *Montagne v. Ag Venture Fin. Servs., Inc.* (*In re Montagne*), 2009 WL 32394, at *2 (Bankr. D. Vt. Jan. 5, 2009).

Flynn argues through his affirmative defenses that GMAC and the Trustee are not entitled to any monies from Flynn because of the actions/inactions of the Debtor, knowledge of which GMAC failed to disclose. What Flynn fails to appreciate is that in avoidance actions the trustee represents the interests of the estate and its creditors, not the interests of the debtor. *Boyle v. Wells* (*In re Gustav Schaefer Co.*), 103 F.2d 237, 241 (6th Cir. 1939); *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 705 (6th Cir. 1999) ("A bankruptcy trustee is the representative of all creditors of the bankruptcy estate."); *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir. 1988) (the right to invoke the avoiding powers under § 544 or § 548 belongs to the trustee as the representative of all unsecured creditors).

As a consequence, the Trustee is not in privity with the Debtor, and the alleged wrongdoing of the Debtor and/or GMAC cannot be imputed to the Trustee and serve as a defense against the Trustee's fraudulent transfer claim. *See Springer v. Okaw Truss, Inc.* (*In re Top Flight Stairs & Rails, Ltd.*), 398 B.R. 321, 324 (Bankr. N.D. Ill. 2008) (citing cases that find that an estoppel defense premised upon the debtor's conduct cannot bar a trustee's avoidance action). "When a trustee asserts a claim based on his avoiding powers under the Code (as opposed to a claim to which the trustee has simply succeeded under section 541(a)), there is no privity between the trustee and the debtor, and the debtor's conduct is not binding on the trustee." *Id.* (citations omitted).

Flynn's affirmative defenses of estoppel and negligence of the Debtor and/or its employees impermissibly attributes to the Trustee the wrongdoing of the Debtor and/or GMAC. The same can be said of Flynn's waiver defense since the Trustee did not waive its claim, and any defense premised upon the theory that the Debtor waived arguments or rights by virtue of its misconduct cannot be asserted against the Trustee. Accordingly, the bankruptcy court did not err in striking these defenses.

Likewise, the bankruptcy court did not abuse its discretion in striking the defenses of accord and satisfaction, setoff, and laches. The defenses of accord and satisfaction and setoff are not defenses to a fraudulent transfer action. *Erie Marine Enters., Inc. v. Algoma Central Marine* (*In re Erie Marine Enters., Inc.*), 213 B.R. 799, 803 (Bankr. W.D. Pa. 1997) (holding that an accord and satisfaction is not a defense to a fraudulent transfer action because even if the elements of accord and satisfaction are met, the court must still determine whether reasonably equivalent value was exchanged). With regard to the defense of laches, the Debtor's bankruptcy petition was filed on June 3, 2004 and the Trustee's avoidance action was brought on November 4, 2005. Because the Trustee's avoidance action was commenced well within the guidelines established under § 546(a), there is no valid laches defense against the Trustee.

The bankruptcy court did not abuse its discretion in granting the Trustee's motion to strike the second through seventh affirmative defenses of Flynn as they relate to count II of the Trustee's cross-claim.

Order Dismissing Flynn's Cross-Claim

Flynn's cross-claim against the Debtor asserts that Flynn suffered and would continue to suffer damages including, but not limited to, the value of the assets purchased by Flynn and the loss of revenue. Through its cross-claim Flynn sought damages from the Debtor in an amount greater than what was owed by Flynn to the Debtor under the Purchase Agreement. The bankruptcy court dismissed Flynn's cross-claim as untimely, on the grounds that it was akin to filing a late proof of claim. The bankruptcy court also found that the cross-claim was directed at the Debtor rather than the Trustee, and that it failed to plead fraud with specificity.

An unsecured creditor must file a proof of claim in order to have its claim or interest allowed in bankruptcy. Fed. R. Bankr. P. 3002(a). A properly executed and filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Flynn did not file a proof of claim against the estate before the deadline expired on March 21, 2005. On February 10, 2006, Flynn filed a motion to extend the proof of claim deadline. The bankruptcy court denied the motion, finding that the bar date had expired one year earlier and that Flynn had failed to establish excusable neglect to justify extension of the deadline. Having failed to file a proof of claim, and having had his motion to extend the time for filing a proof of claim denied, Flynn's attempt to hold the Debtor liable for damages by way of the cross-claim is prohibited. The bankruptcy court did not err in dismissing Flynn's cross-claim.

Order Denying the Trustee's Rule 9019 Motion to Approve Settlement of Claims

On November 2, 2007, the Trustee filed a motion for an order to settle claims pursuant to Federal Rule of Bankruptcy Procedure 9019. The proposed settlement provided that Flynn would pay $337,614.14 to the Trustee and relinquish all rights to the $58,039.98 held in escrow. The proposed settlement was premised upon Flynn's right to setoff certain credits against the purchase price for the Operating Assets. GMAC filed an objection to the proposed settlement, arguing that the settlement was not in the best interests of the estate, and asserting that the Purchase Agreement did not permit setoff.

The bankruptcy court found that Flynn paid only $58,039.98 of the more than $500,000 owed for Operating Assets under the Purchase Agreement, and denied the Trustee's motion. Concerning Flynn's claim of setoff, the bankruptcy court permitted Flynn to pursue limited setoff even though he did not file a proof of claim.[10] However, the court concluded that the Debtor may owe only $20,344.22 of the credits claimed (payroll and deposits) by Flynn. As to the remainder of the credits,[11] the bankruptcy court had "serious doubt" that the Debtor owed Flynn any of the amounts claimed as credits. In the end, the bankruptcy court found that the proposed settlement was not in the best interests of the estate and its creditors.

Bankruptcy courts have significant discretion to approve or disapprove a settlement or compromise pursuant to Federal Rule of Bankruptcy Procedure 9019(a). *In re Anderson*, 377 B.R. at 868. In reviewing a proposed settlement, a bankruptcy court is under an affirmative duty to apprise itself of all necessary facts so as to make an informed and independent judgment as to whether the settlement is fair and equitable to the nonsettling parties. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163 (1968); *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988); *In re Anderson*, 377 B.R. at 870-71 (the court "need only be apprised of the relevant facts and law so that [it] can make an informed and intelligent decision and set out the reasons for that decision."). The factors to consider in determining whether a settlement should be approved include "the probabilities of ultimate success should the claim be litigated," and the costs attendant with such litigation in terms of complexity, expense, inconvenience, delay, and the likely duration of a lawsuit, including the possible difficulties

___

[10]Recovery on Flynn's setoff claim was limited to the amount of the Trustee's damages. On appeal, the parties did not take issue with the bankruptcy court's conclusion that Flynn could pursue his right of setoff even though he did not file a proof of claim. Therefore, this Panel will not review the bankruptcy court's decision on that issue.

[11]The credits claimed by Flynn include $108,865.80 (overpayment on the purchase of new 2004 model vehicles), $3,300 (deposits received on new vehicle orders), $17,044.22 (amounts paid toward the Debtor's payroll), $32,935.81 (sales tax), $29,814.19 (assumption of liability on outstanding warranties and credit life policies), and $21,765.00 (amounts paid for leased office equipment).

15

of collecting on any judgment. *TMT Trailer Ferry*, 390 U.S. at 424-25. "Basic to this process in every instance . . . is the need to compare the terms of the compromise with the likely rewards of litigation." *Id*. The bankruptcy court is not required to conduct a mini-trial when evaluating a settlement. As the proponent of the settlement agreement, the Trustee bears the burden of showing by a preponderance of the evidence that the proposed settlement is fair and equitable for the nonsettling parties. *Velde v. First Nat'l Bank & Trust* (*In re Y-Knot Constr., Inc.*), 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007).

On appeal, Flynn makes much of the fact that the bankruptcy court focused on the credits at issue rather than on determining whether the proposed settlement was reasonable. However, the record makes clear that the settlement proposal was premised on an agreement between the Trustee and Flynn that Flynn was entitled to credit payments he made against the purchase price for the Operating Assets. Given the bankruptcy court's conclusion that Flynn was not entitled to reduce the purchase price as claimed, it was entirely within the bankruptcy court's discretion to find that $337,614.14 was not a fair and equitable settlement on a liability of $559,283.31. The bankruptcy court's order denying the Trustee's Rule 9019 motion is affirmed.

### Order Granting Summary Judgment in Favor of GMAC and Against Flynn

Summary judgment in adversary proceedings is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. The Court of Appeals for the Sixth Circuit has succinctly described the standard to grant a motion for summary judgment as follows:

> A court must grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Under this test, the moving part[y] may discharge its burden by pointing out to the [bankruptcy] court ... that there is an absence of evidence to support the nonmoving party's case. The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. The mere

16

existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].

*Hall v. Tollett,* 128 F.3d 418, 421-22 (6th Cir. 1997) (internal citations and quotation marks omitted).

The bankruptcy court granted summary judgment to GMAC on the grounds that Flynn breached his contractual obligation to the Debtor by failing to pay $501,243.33 as required by the Purchase Agreement. The bankruptcy court also found that Flynn failed to establish genuine issues of material fact that payments made by him should be credited against the purchase price, that he did not owe two anniversary payments because of odometer fraud, and that he was entitled to a setoff because of GMAC's and/or the Debtor's improper conduct.

A breach of contract claim in Ohio requires (1) the existence of a binding contract, (2) the nonbreaching party fulfilled its contractual obligations, (3) the breaching party failed to perform its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages as a result of the breach. *Garofalo v. Chicago Title Ins. Co.*, 661 N.E.2d 218, 226 (Ohio App. 1995) (citations omitted).[12] The overriding concern of courts when construing a contract is to ascertain and give effect to the intention of the parties. *St. Marys v. Auglaize County Bd. of Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007). When a contract is clear and unambiguous, courts are constrained to apply the plain language of the contract. *Id*.

The record on appeal overwhelming supports the bankruptcy court's conclusion in every respect. The Purchase Agreement is clear and unambiguous. Flynn paid $58,039.98 for assets for which he was contractually obligated to pay $559,283.31. The Purchase Agreement does not allow Flynn any right of setoff against the purchase price. The bankruptcy court's findings are not clearly erroneous, and there is no error of law in the bankruptcy court's conclusions. For the reasons stated

---

[12]The parties did not argue that the Purchase Agreement was a contract for the sale of goods under the Uniform Commercial Code. *See* Ohio Revised Code 1302 *et seq*.

in the bankruptcy court's thorough opinion, the order granting summary judgment in favor of GMAC and against Flynn is AFFIRMED.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's orders granting the Trustee's motion to strike affirmative defenses and dismiss Flynn's cross-claim, denying the Trustee's motion to approve settlement of claims, and granting summary judgment in favor of GMAC and against Flynn are AFFIRMED.